Plaintiff's Name _LEON LEE MEYERS_

Inmate No. _AB7261_

Address _CSP/CORCORAN, POB 3471-_
_124L, CORCORAN, CA 93212_

_____

**FILED**

**NOV 1 0 2022**

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| _LEON LEE MEYERS_ | 1:22-cv-00539-SAB (PC) |
| (Name of Plaintiff) | (Case Number) |

vs.

_SCOTT KERNAN (DIRECTOR CDCR),_

_K. ALLISON (SECRETARY), C/O_

_MENDEZ, CCI LIZAOLA, SGT. (BOTH SVSP)_

_THOMAS. C/O SIMPSON, MR._

_BOWLIN (LIBRARIAN), MR._

_KOOP (PRINCIPLE), CPT._

(Names of all Defendants)

**AMENDED CIVIL RIGHTS COMPLAINT UNDER:**

☑ **42 U.S.C. 1983** (State Prisoner)

☐ **Bivens** Action [403 U.S. 388 (1971)] (Federal Prisoner)

PLAINTIFF'S THIRD AMENDED COMPLAINT,
JURY TRIAL REQUESTED

**RECEIVED**

**NOV 1 0 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____DEPUTY CLERK

**I. Previous Lawsuits** (list all other previous or pending lawsuits on additional page):

    A. Have you brought any other lawsuits while a prisoner? Yes _X_ No____

    B. If your answer to A is yes, how many? _SEE ATTACHED CHRONALOGICAL (THOUGH A FEW OTHERS_
                                                              _ARE NOT DOCUMENTED PLAINTIFF WILL FORWARD)_
    Describe previous or pending lawsuits in the space below. (If more than one, attach additional page to continue outlining all lawsuits in same format.)

        1. Parties to this previous lawsuit:

        Plaintiff _PLAINTIFF DOES NOT HAVE THIS INFORMATION AT THIS TIME._

        Defendants _____

        _____

        2. Court (if Federal Court, give name of District; if State Court, give name of County)
        _____

        3. Docket Number _____      4. Assigned Judge _____

        5. Disposition (Was the case dismissed? Appealed? Is it still pending?)
        _____

6. Filing Date (approx.) _____   7. Disposition Date (approx.) _____

## II. Exhaustion of Administrative Remedies

**NOTICE:**   Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prior to filing suit, inmates are <u>required</u> to exhaust the available administrative remedy process, *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1999 (9th Cir. 2002), and neither futility nor the unavailability of money damages will excuse the failure to exhaust, *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002).  If the court determines that an inmate failed to exhaust prior to filing suit, the unexhausted claims will be dismissed, without prejudice. *Jones*, 549 U.S. at 223-24, 127 S.Ct. at 925-26.

A. Is there an inmate appeal or administrative remedy process available at your institution?

Yes___X___   No_____

B. Have you filed an appeal or grievance concerning **ALL** of the facts contained in this complaint?

Yes___X___   No_____

C. Is the process completed?

~~Yes~~_____   NO   If your answer is yes, briefly explain what happened at each level.   THEY SIMPLY THREW AWAY THE APPEALS

ON SEVERAL OCCASIONS PLAINTIFF HAS ATTEMPTED TO FILE INMATE APPEALS 602 FORMS, THEY WERE NEVER DOCUMENTED WITH THE EXCEPTION OF ONE WHICH WERE RESPONDED BY SGT. THOMAS WHICH TOLD PLAINTIFF "NOT TO FILE GRIEVANCES". AS A RESULT, THEY HAD RETURNED MY PACKAGE BACK TO WALKENHORST'S! EVEN SO, PLAINTIFF ATTEMPTED TO FILE OTHERS BUT NEVER GOT ANY RESPONSE!

No___X___   If your answer is no, explain why not.

_____(SEE ABOVE)_____

## III. Defendants

List each defendant's full name, official position, and place of employment and address in the spaces below.  If you need additional space please provide the same information for any additional defendants on separate sheet of paper.

A. Name ___CARPENTER___ is employed as ___WSP/CPTN.___

Current Address/Place of Employment ___CSP/WASCO___

B. Name  CONTRERAS                 is employed as    SGT.

Current Address/Place of Employment   CSP/WASCO

C. Name  LEDBETTER                 is employed as     LT.

Current Address/Place of Employment   CSP/WASCO

D. Name   M. ATCHLEY               is employed as    WARDEN

Current Address/Place of Employment   SVSP; (SALINAS VALLEY STATE PRISON)

E. Name  THOMAS                    is employed as    CPTN.

Current Address/Place of Employment   SVSP
C/O MAGDALENO (WASCO), C/O DENHERDER (WASCO), C/O AGUILAR (WASCO),
C/O ESPITIA (WASCO), C/O GARZA (WASCO), C/O MEDINA (WASCO), AND
C/O NITESCU (WASCO)

**IV. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary. Must be in same format outlined below.)

Claim 1: The following civil right has been violated (e.g. right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.):

(SEE ATTACHED MEMORANDUM OF CLAIMS)

Supporting Facts (Include all facts you consider important to Claim 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Claim 1.):

(AT MEMORANDUM)

**Claim 2:**  The following civil right has been violated (e.g. right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.):

(SEE ATTACHED MEMORANDUM OF CLAIMS)

Supporting Facts (Include all facts you consider important to Claim 2. State what happened clearly and in your own words.  You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Claim 2.):

(AT MEMORANDUM)

**V. Relief**

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statues.

AWARD $1,000,000.00 (ONE MILLION DOLLARS) IN DAMAGES FOR THE CUMULATION OF MENTAL AND EMOTIONAL DAMAGES, GENERAL DAMAGES, AND PUNITIVE DAMAGES. THAT PLAINTIFF BE ALLOWED A JURY TRIAL ON THESE CLAIMS AND THE RELIEF REQUESTED HEREIN. IN THEIR INDIVIDUAL CAPACITIES, AND IN THEIR OFFICIAL CAPACITIES AS APPLICABLE. AS FOR OFFICIAL CAPACITIES IS TO THE DISCRETION OF THE COURT.

**I declare under penalty of perjury that the foregoing is true and correct.**

Date: _11 - 01 - 2022_      Signature of Plaintiff: _[signature]_

(Revised 4/4/14)

CLAIM ONE:  THIS CLAIM ONLY REFERS TO HIGH RISK MEDICAL COVID PAROLE. THE DEFENDANTS HEREIN, HAS "DISCRIMINATED", AND VIOLATED THE LAWS GOVERNING "EQUAL PROTECTION" IN HANDLING THE EMERGENCY "ELDER MEDICAL COVID RELEASE" PLAN. AS A RESULT PLAINTIFF IS IN IMMINENT, DANGER OF DEATH! THIS VIOLATES PLAINTIFF'S RIGHTS UNDER THE 14TH AMENDMENT OF THE U.S. CONSTITUTION, AND IT CALIFORNIA COUNTERPARTS, 8TH TOO!

1)   On or about 07/05/2020, plaintiff filed a grievance requesting an elderly medical release due to covid 19. On the face of the grievance, plaintiff wrote "EMERGENCY" (see exh.A). At the time of the filing of the inmate appeal, the governor (Gavin Newsome), in concert with the California Department of Correction and Rehabilitation (CDCR) lowered the elderly age from 65 to 50 (see Cal. Penal Code sec.3055). At the time of the filing of the grievance, plaintiff was age 59. However, though the Governor's made this age change, the CDCR dropped the program in early Oct., 2020. (at exh.B though this was added to the Penal code, it was implemented in 2020 by emergency)

2)   The program was supposed to provide release for "high risk elderly persons" meeting the 4 point qualifications..1} age 65 (automatic 4 points therefore qualifying for early release) As alleged herein, that age has been reduced to 50!...2, Chronic lung diseases, Kidney disease, Cancer, Immunocompromised, Persistant asthma, Diabetes, Heart disease, Hemoglobin disorder, Neurological conditions, Obesity, and other issues as well. These, are conditions that would have qualified inmates for relief (~~elderly~~ MEDICAL parole). The program applied to "all with weighted Covid Risk Score of four points or higher" (at exh.C). Though this claim mentions "Elder Parole", it only addresses Covid-19 Parole and only uses the word "elder parole" because of the reduced age factor.

3)   As a result of the CDCR program for elder medical parole, plaintiff qualified. He fit all the criteria, a low risk for violence, were not a sex offender, and were not a condemned or LWOP inmate. Because plaintiff had filed his grievance in july (about 90 days before the program ended), the CDCR staff purposefully held the appeal until the program ended. (see exh.A) They didnt even leave their name! Plaintiff was entitled to Covid-19 parole for high risk. (1)

4)   Finally, when the review of the 602 appeal was conducted (hereafter 602), the reviewer used the wrong program analysis for release. (see exh.C, p.1). The program used by the warden (R. Gamboa [CDW]A) was clearly error. The correct analysis is for 65 and older with high risk factors is on the reverse side of exh.C at p.2. This was done on 7/18/20, when the elderly medical release program was still in effect. He totally ignored it! What made it worse is the fact that the highest level of appeal, held the 602 until the expiration of the day the elderly program expire, and it is clear that it was done on purpose. (see exh.A at first page). This is foul play. I also met the criteria for Proposition 57.

5)   Plaintiff is 60 years old with chronic kidney disease, high blood pressure, deginerative hip disease w/mobility impairment, heart disease w/aspirin  regiments, chronic back pain w/pain meds and uses a cane for mobility support, and asthma. Palintiff has not been vaccinated, nor does he want to be based upon his interfaith. Plaintiff does not have nor have he ever contracted Covid 19. Plaintiff feel that if this court does not grant relief requested in his motion for "injunctive relief" that he will ultimately catch Covid 19 and die from the disease.(at exh. A) Not withstanding the Plata/Coleman rule which clearly ordered the prison population reduced based upon the inadequate medical care and crowded conditions, the Plata/Coleman court made cleare, that it had reduced elderly parole to 60 years old and to consider medical conditions. The harm and danger presented by Covid 19 is ever so imminent harm or death. Though plaintiff appears as if he's arguing, he is only fearful for his life. Actually, the high risk medical Covid 19 release was for anyone with the 4 point risk score. The 65 age was automatic 4 points. I met the standards. This claim is equally applicable to the Prop.57 claim as presented in the grivance (exh.A).

CLAIM TWO:     BECAUSE PLAINTIFF HAS EXERCISED HIS RIGHTS TO FILE SUITS,
               GRIEVANCE, AND TO HELP OTHERS DO THE SAME, COUPLED WITH
               HELPING OTHERS FILE LAWSUITS AND WRITS, HE HAS AND IS
               CONTINUING TO BE RETALIATED AGAINST. VIOLATING HIS 1ST,
               AND 14TH AMENDMENT RIGHT TO THE U.S. CONSTITUTION AND
               ITS CALIFORNIA COUNTERPARTS ALSO, 8TH AMENDMENT..

1)   Here, plaintiff alleges that while he was in Salinas Valley State
Prison (SVSP), he helped other inmates file grievance and helped them
with their legal matters too (including lawsuits). He was always aware
that c/o's were complaining about filing grievances and lawsuits going
on cell search rampages and specifically saying that these filings are
the reasons for the searches. The main officer leading the searches at
SVSP, was c/o Mendez. He was assisted by c/o Gutierrez, and Haro.

2)   On or about 01/29/2021, Mendez came to work , (about 2:PM) and
soon after he got himself situated, he gathered his pardner (Gutierrez)
and begain yelling "alright you guys wanna file all these grievances
and law suits, Im going to start hitting houses"! They searched the
whole bottom tier, and then on the next day, they searched the top!
Whenever he gets interviewed for a grievance filed against him, he
goes on a cell search rampage! On that day (01/29/21) I was told that
he found out I was helping inmate "Grant" (Patrick Grant #T33889) sue
him and one of his co workers (Hora). as a result, he searched the
entire Bldg.(see Attachment #1 p.1). I had personally filed 2 lawsuits.

3)   That same day, Mendez told plaintiff that he was "out of here" !...
(meaning transfer). He told plaintiff that he had spoke with CCI Lizaola,
and some of the peolple "Grant" had sued, and had also stated "man you got
to go." Plaintiff hadnt known that he was going to be sent to Wasco, nor
had CCI Lizaola told plaintiff anything but that he would go to either
CMF III, or CMC III with alternate of another Medical facility. This is
what counselor Lizaola had spoke with plaintiff about on or about 01/22/21.

4)    Between 01/29/21 through 04/22/21 (day of transfer), my cell was searched repeatedly (about 30-40 times). When I returned to the Bldg. from yard, someone would tell me "Mendez been in your cell man". Ever since he got served, he repeatedly searched my cell when he found out it was me. He took numerous items of my personal property without even giving me a cell search slip. The staff members worked so close together, I feared to file another grievance, and when I filed a grievance regarding the 01/29/21 cell search objecting to the rule violation report 115, it was simply thrown away! Also, these searches was a definate risk of harm to my health and safety because Im 60 years old, have varriuos qualifying health problems which would make me a high risk for Covid 19, and, Mendez and his pardners has already cought Covid 19. When they search they go through varrious food items and containers. I never had a vaccination and dont want one. As mentioned supra, if I catch Covid, I would more than likely die from it.

5)    Finally, When I arrived here in CSP Wosco, I recieved my property and it was missing several "Police Practice and Training Manuals"......
such as..." Basic Course Workbook Series Learning Domain 16 Search and Seizure Version Three", There was also "Laws of Arrest" workbook, (inter alia). While at SVSP, I had all my Police Training material which consisted of over 10 books, manuals, pamplets and documents recieved by my attorney on "Pitchess motion". Thereafter, I went pro per and after my appeal became final, all my discovery was sent to me in at least 4 boxes! They took my Police training manuals and material on purpose. This was done between the transfer and the time they gave me my property here at Wasco Prison. I discovered that because of the lawsuit I helped inmate Grant file against him and others (Mendez), he went on a rampage searching cells! This is retaliation!

6)    In addition, plaintiff alleges that, he had always had problems
with staff in his attempts to help others in other buildings (Bldg.s).
even while in the law library. Here at Wasco, while I was in Quarantine
status (in Bldg. 4), I filed a grievance complaining that I needed my
property because I was actively representing inmates from SVSP. When
I turned in the grievance, I also filed 2 ADA accomodation forms (CDCR
1824). On one of the forms plaintiff requested to be housed as a "single
cell" inmate, due to the covid epidemic and state of emergency as the
situation calls for emergency actions! On the other form, (CDCR 1824),
I requested A1A Unassisgned status due to my disabilities, age, and the
fact that I have been denied and/or refused to be placed into a fulltime
qualified assignment ever since 2014 to this day (09/20/21) and counting.
I was escorted to the program office to place my grievance and two ADA
accomodation forms in the box outside of their office. I never heard or
recieved any reply from my two ADA 1824 accomodation requests. I also
filed a medical grievance requesting single cell status. They never replied!

7)    Shortly after I filed these documents, I was released to the gener-
al population on 05/10/21. I filed the grievance and 2 ADA forms about
05/05/21. On 05/11/21, I was walking past the program office attempting
to go to the canteen. I was stopped by SGT. Thomas, he ask me was I
"Meyers", I said yes. He told me he was reviewing my grievance regarding
my property. Then he said..."Man you shouldnt have filed a grievance"!
"All you had to do is come talk to me." "Dont file grievances."! I
felt uncomfortable by that comment so I didnt say nothing but asked
when will I get my property. He said soon. After a few days past, I
was called to the Gym for my property. I noticed all my boxes were
already open and my Quarterly package was not with the rest of my prope-
rty, however, on one of the boxes, it say "10 of 10". I only was given
8 boxes.

(5)

8)   The officer who gave me my property that day was c/o Simpson .
I found out later that because I filed a grievance requesting my prope-
rty and legal work/materials, they (he and Sgt. Thomas) sent my package
back to the vendor (Walkenhorst's). When I realized I hadnt gotten all
10 boxes of my property, I filed another grievance. After that, I had
problems with the law librarian (Mr. Bowlin) so I filed one on him too.
But before I filed the grievance on Mr. Bowlin, I went directly to
the program office and complained to the Cpt., Lt. and Sgt. (Twice)
(Cpt. Carpenter, X̶X̶t̶x̶x̶ ̶X̶X̶X̶X̶X̶X̶X̶X̶ Sgt. Contreras)(Lt. Ledbetter)
before I filed the grievance. I filed the last grievance on 08/03/21,
they threw that grievance away! I never gotten a reciept nor heard any-
thing from the "grievance coordinator". Before plaintiff goes further
into the  claims for relief, the court should note that attachment #1,
is a chronological documentation of some of the inmates litigations
drafted by plaintiff. (at Attachment #1).

9)   On the day of my classification for housing placement, a few days
before the hearing, I talked with CCI V. Lizaola about where I would
be housed. I told him I would want to go to the None-Designated yards
and had no problem being housed there. However, due to the lawsuits I
was assisting people with, he conspired with other officers and when I
said that I wanted to go to the canteen on 01/26/21, he lied at the
hearing and told the committee I said I didnt want to be housed with
Non Designated Program Facility inmates. So when I was transfered, I
was sent to Wasco State Prison (General Population), and Mr. Lizaola
claims plaintiff requested to go there! Also that, plaintiff's brother
is housed there so that plaintiff can be there with his brother.
For one, plaintiff's brother is a retired Fire Cpt. from the Richmond
Fire Dpt. Mr. Angel Ray Bobo. He lives in a small "mansion" built from
the ground up, in the Oakland hills and has never been in jail ever!

10)   The transfer was arbitrarily done for one purpose, to place plaintiff's health and safety in jeopardy. This is so because a general population yard (GP), will normally ask for your "paperwork" (meaning all your documents explaining why your there and what for). If an inmate thought plaintiff was a "Vio Sex offender" (which they classified me as), (even though plaintiff is not and has never been convicted of a sex offense!), they would attack him and the classification staff knows this! The transfer and the lies documented in the chrono was done to place my life in danger. This shows the court that plaintiff is being truthful regarding this whole event. They planned to do this! The only safe yard for plaintiff is a None Designated yard (NDPF). This includes the assistance of c/o Haro, c/o Mendez, Sgt. P. Garcia, Warden Biter, E.J. Borla, and C. Ballard. Also L. Pennisi (Chairperson). They paticipated in this conduct in concert!

11)   It can be established that, upon being served a copy of the suit against these defendants in the "Grant" case, they conspired to seek revenge by 1, cell searches and unlawful confiscation of property (such as my legal materials as alleged supra), 2, an adverse and dangerous transfer to a GP yard in which presents a threat to plaintiff because of his "Vio Sex" determinations (even though plaintiff is not a sex offender!). 3, the conduct was a carryover effect, and that these prisons were in concert with this conduct (as demonstrated infra). Also, a look by this court at exh.D, should establish that the timing of Mendez's conduct alleged supra, is consistant with the discovery of the lawsuit and the basis for his actions as well as others.(see exh.D). Plaintiff was also confronted by the Warden M. Atchley, and Cpt. Thomas of SVSP, and threatened 115 RVR's and that was told to be housed with other inmates (to compact).

(7)

12)   These high ranking officials repeatedly tried to force several
inmates to leave the Bldg. so that they can use the Bldg. for "Recept-
ion" and "Death row" inmates. I had repeatedly said, and had personally
told both these officers that "if you force me to leave my cell, and
compact with other inmates, I will sue you"! they threatened to do
cell extractions. I personally had spoke to both the Warden Atchley
about ~~Elderly~~ <u>Covid-19</u> medical parole, as well as Proposition 57. They came to
my door on at least 3 different occasions. I had refused to move or be
housed with someone because of the Covid 19 virus. I spoke with these
officers around November 2020. At any rate, I was targeted specifically
because I represented my rights and filed lawsuits. Because of that,
these officers threw away the grievances, they never replied and
threatened to do cell extractions. These officers spoke against me
exercising my rights and told me I had too much legal material in my
cell. I explained it was other peoples cases. I was always being
targeted for litigating peoples cases and suits. When Warden Atchley
and Cpt. Thomas told me they would have me extracted from my cell, they
told me "we aint going to be nice about it!" (verbatim)

13)   OFFICERS AT WASCO HAS REPEATEDLY RETALIATED AGAINST ME FOR
      FILING LAWSUITS, WRITS AND GRIEVANCES. ALSO FOR COMPLAINING TO
      STAFF ABOUT THE LAW LIBRARIAN AND FILING ON HIM TOO.

This started from the very first grievance I filed back in April 2021
for my property, and one about being placed on quarantine, along with
the 2 ADA 1824 forms. They only responded to my property appeal though.
At any rate. About may 10, 2021, I was housed here in 1 Bldg. cell
125. As Ive stated before (supra) I was walking past the program
office and was ask by Sgt. Thomas was my name "Meyers"? After he conf-
irmed who I was, he went on to tell me not to file grievances. I was

(8)

also told this from the property officer (c/o Simpson). As a result
of my exercising these rights, I begain experiencing a series of cell
searches. Especially after I complained to the program office staff
about Mr. Bowlin (the librarian). From the end of May 'til Sept. 13,
2021, my cell was searched about 30-40 times by c/o Espitia, c/o
Aguilar, c/o Magdaleno, and c/o Denherder and c/o Medina. Most of these
searches was conducted when I was on the yard. When I would return,
they would tell me that they (the officers) whent in my cell. Every
time I returned from yard, I would find my property and legal work
disoriented an went through. (see declaration of Derrico Delery hereto)

14)   The lead officer to these searches, were officer Espitia. He is
always leading this mission to come into my cell and take varrious
items of my personal property. As of today, Im not clear of all the
things taken from me. However, I tried to ignore the searches until
they simply kept comming! They searched my cell so much that other
inmates would either avoid me, or ask me why are they doing this. I
would say that because Im helping people file suits, grievances and
writs. I started asking for cell search slips and they would say we
only give those out when we take stuff. (each time they took things
from my cell) I started feeling sad because I knew they were trying
to break me. When ever people came to my cell for legal advice, c/o
Espitia would tell them to get away from my door. They started taking
all kinds of property and giving it away or saying it was "hot trash"
even though I have reciepts for everything they took. (see Exh.E)
One day., I was giving legal advice to inmate Clark, Espitia told
Clark to get away from my cell door. About 5 minutes later,  c/o
Espitia and c/o Magdaleno came to my cell and told me to step out,
they ruffly searched me for contraband (provocation type pat down).

(9)

15)   They proceeded to search my cell. I walked over after they had been searching for approximately 15 minutes and was looking into my cell. c/o Garza immediately told me via loud speaker, to move away from looking into my cell. I said I had aright to see and observe a cell search per tltle 15. The officers came out the cell holding their clubs as if they would strike me. I walked away and sat down but when I walked up to my cell, I observed c/o Magdaleno sitting on my bunk reading documents from my legal work. When I returned to my cell, they had took all kinds of my property and they refused to let me see what they had took. (see exh.E p.2)

16)   After they searched my cell, they proceeded to search Mr. Clark's cell (then 127). (see declaration of Christopher C. Clark attached hereto) This was done to intimidate him from asking me for legal assistance. However, I crafted and filed his lawsuit anyway (see Clark v. Gutierrez et al., 1:21-cv-01386-EPG) Espitia, Garza, and Aguilar are defendants of that lawsuit (inter alia). Clark has several pins and plates in his neck from a surgery he had previously had yaers ago. Hoever, he tripped over an unrepaired arch in the pavement on the way to chow and injured himself. He asked me to help him with his legal work so I told him how to go about everything and when he was finished filing his grievances, I prepared his lawsuit. I had also told him how to file the grievance.

17)   At any rate, they searched Clarks cell in concert with my cell, for retaliatory purposes. Clarks lawsuit covers the Warden on down to regular c/o's.   This is retaliation! Also, on two separate occasions, they searched inmate Todd Davie. They searched his cell for seeking my assistance!

(10)

18)   On two different occasions, I was helping inmate Davie with his legal work. One day he was complaining loudly at my door that he wanted to filed a complaint against the Librarian Mr. Bowlin, and certain officers. I had told him to hold his voice down because my cell is directly behind the officers Podium, every time someone comes to my cell, its usually for legal assistance so the officers always pop up and look at my cell and tell them to leave. This was about 08/12/21. They searched his cell and on 08/31/21 we both were at the law library, when we returned, they had searched both our cells. I did not get a reciept. (see declaration of Todd Davie enclosed)

19)   Moreover, on 07/15/21, they searched my cell, they took all kinds of property from me. they didnt document everything they took, but what I can see from the slip was 2 watches Timex and Casio, 2 fingernail clippers, 1 adapter, 1 personal cup and bowls, 10 authorized pens (indigent state pens), TV antena, USB adaptor, personal food items such as Packaged bought Pecanti suace and bloks of cheese. and 1 J Win FM Radio. He (Espitia and Magdaleno) threw away all these items in which I have a reciept for, I was not allowed to even send them home though I have funds to do so. At any rate, it was done because I filed legal work and assisted others in doing so.

20)   Again on 08/06/21, they searched my cell, they took an extra cable or cord, and my battery charger. I had to insist for a cell search slip, when they gave it to me, they failed to put their names on the slip. (they left it blank!) I insisted that they sign the form c/o Aguilar signed their names. But they didnt want to because they knew they were wrong. They gave my property to the property officer, Simpson, he gave it away (possibly to worker). I was never given an opportunity to send anything I owned home. Nor was they even allowed to take it. I didnt have anything I hadnt payed for!

(11)

21)    Again on 09/14/**21**, my cell was searched by c/o Denherder, and
c/o Medina, when I returned to my cell, my cell was completely trashed
and I couldnt determine all the damages until a couple days. At any
rate, this was an institutional search (shakedown). The first thing I
noticed was my legal materials were all wet, all my boxes! Water was
actually poured inside them or so it appeared because when I dug into
the boxes, the papers inside was wet! I have about 5 boxes of legal
material. Most importantly, my typewriter was busted open and my key
pad was bent at the corners. I was so frustrated, I started kicking
the door as hard as I could until someone came to see what I wanted.

22)    Officer Espitia came to the door and had it opened. I demanded
that he observe that my typewriter was broken open and that my legal
boxes were wet! I insisted that he sign a CDCR 22 form so that I could
send it directly to the warden via "legal mail" he signed it and looked
into my cell, but he refused to let me send the form legal mail and
insisted that he would mail it to the Warden. (see exh.F) This was
the last straw. When I returned to my cell, an inmate told me that he
saw Denherder pour out a bag of laundry soap in the urinal next to my
cell. I descovered I was missing the only bag of laundry soap I had.
Not only did I file that 22 form but I also filed a medical request
form and personally gave it to the Psycologist (Mr. Hollands), I was
very distraught that day. I knew they were targeting me. (see exh.F)
I am a CCCMS level of care in the mental health program and take meds
for depression and anxiety inter alia. It should be noted that every
cell search I had, my legal work was always left disoreintated, and
my cell trashed. I am missing numerous items not documented. They go
inside food products, my cups and bowls were on the floor. This also
constitute a reckless disregard for my health and safety as demonstra-
ted below.

23)   After that last search, I had realized they were clearly trying to break me from filing appeals and lawsuits for people. They also were trying to scare and harass me. They had looked at my evidence photos that were photos of an injured officer (subject of my criminal case), they are clearly retaliating against me.

CLAIM THREE:   THESE REPEATED CELL SEARCHES TO PLAINTIFF'S CELL, CREATED A SUBSTANTIAL RISK TO PLAINTIFF'S HEALTH AND SAFETY. THE COVID 19 VIRUS EXACERBATED THE RISK. ALSO, THEY KNEW AND IGNORED THE RISK BY CONDUCTING ALL THESE MERITLESS CELL SEARCHES U.S.C.A. 8TH. (SEE ALSO CLAIM SIX RELATED ISSUES)

1)   Here, plaintiff alleges that on or about June 24, 2021, also they repeated this information in July 06, 2021, the "Headquaters of Public Health Branch", gave out pamplets about the new Covid 19 Delta Variant. Directly after they gave out these pamplets, they conducted a search of the intire yard. They went through everything such as food items they probed through peoples (inmates) coffees, creamers, pouches, mayonaises, and using utensils such as a stick or screwdrivers. This is a direct and clear act that spreads this virus! Plaintiff is aware of the need for "penalogical interests" such as safety and security of the institution.

2)   However, under these emergency circumstances, the repeated cell searches will spread the disease. The rules are to social distance, (meaning 6' feet apart), wear masks, and clean hands and areas where you frequent. Because of plaintiff's age and numerous medical conditions, he requested to be "single cell" status pending the resolution of the covid epidemic. The searches must be limited to meaningful penological interests. Not for harassment, retaliation, or fishing expiditions. Not withstanding the fact that they used approximately 10 dogs (which does not die from covid and is known to carry the virus) to sniff food items, utencils, coffees, creamers, and anything the may be used to hide contraband. This is a direct threat to my safety!

3)    The Director ( Scott Kernan      ) nor the Secretary (K. Allison),
can claim that they were "unaware" of the risk of harm that mass cell
searches (without some type of meaningful precausion) would cause a
substantial outbreak of covid. At any rate, to do so would be a conscious
disregard for the health and safety of the affected individuals. Though
plaintiff only make this claim on his own behalf, it is necessary to
point to the facts as we know to be true. The very next day of the last
search, the institution issued a "quarantine" lock down for Bldg.2. When
we were out on the yard for the search, they stripped our mattreses of thier
linen, and stacked the approximately 50 high w/footprints all over them.

4)    This issue is exacerbated by the staff herein (Cpt., Program admini-
strator, etc.) ; in the mid of August 2021, forced numerous inmates to
compact due to the fact that they wanted convienience for the Substance
Abuse Program inmates all to be housed in Bldg. #1. (compact/double cell)
Simply because its close to the education Bldg.. For all the foregoing
reasons, plaintiff brings a cause of action to these defendants for the
specific act of a waton disregard to my health and safety for the reapet-
ed cell searches to plaintiff. Notwithstanding the retaliation, and
harassment, it presented a threat to plaintiff's health and safety, and
                                   Lt. Ledbetter
they knew this! Cpt. Carpenter, ~~Lt. Ledbetter~~, Sgt. Contreras, Supervised
the searches (inter alia). At classification, Cpt. Carpenter commented
that all of us should get the Covid desease. After a single cell request.
CLAIM FOUR:    THE LAW LIBRARIAN IS WORKING "IN CONCERT" WITH THE CUSTODY
               STAFF TO HINDER, INTERFERE, AND THWART PLAINTIFF'S ATTEMPTS
               TO ACCESS THE COURT, HELP OTHERS AND SEEK REDRESS OF GRIEV-
               ANCE. PLAINTIFF IS IN FEAR TO CONTINUE DUE TO RETALIATION

1)    Here, plaintiff alleges that in his last grievance, he complained of
Mr. Bowlin's conduct. Mr. Bowlin has refused to let plaintiff access the
computers. He refuses to allow plaintiff copies of court cases (even thou-
gh plaintiff pays for copies with his own funds). His excuse for not
providing copies, is that copies of cases is only provided while on lock
downs, or if you are in ad/seg (the hole), or visually impaired. Not with-
standing the fact that he denied a yisually impaired litigant copies.
Plaintiff is visually impaired.    (#4)

2)   On one occasion, plaintiff was attempting to assist an inmate with
his writ and requested that he get a copy of a certain Senate Bill (SB82),
When Mr. Bowlin saw that I was helping this person (Inmate Iles CDCR
#BN3241), he refused to give him a copy of the bill, told plaintiff he
had to leave, and tore up Mr. Iles Trust Withdrawal request for that bill.
Even though plaintiff had told the librarian that he had a right to
assist Mr. Iles and cited to the law, and Title 15 CCR 3163. Mr. Bowlin
insisted that plaintiff leave. He said you guys will have to put in a
request for that and he will send a pass on a later date. But I couldnt
help him. This was odd because plaintiff and Mr. Iles were given passes
for library attendance that day. (see exh.H).

3)   On two separate occassions, before plaintiff filed his grievance
about Mr. Bowlin's conduct, plaintiff went directly to the "Program
Office" and complaint in person to ̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶, <sup>Lt. Ledbetter</sup> Cpt. Carpenter, and Sgt.
Contreras, they siad they were aware of Mr. Bowlins conduct by and through
other inmates complaints. They directed plaintiff to the Principle, Mr.
Bowlins supervisor. Plaintiff filed to the Principle, a "Request For
Interview" form. He ignored it. Thereafter plaintiff filed his grievance,
they obviously threw it away. The principle is Mr. M. Koop....... The
only grievances allowed through the process, is grievances where they have
penalized an inmate for violating a rule or law. They then punishes the
inmate to the fullest extent of their authority. However, as here, they
work in concert to obstruct any attempts to complain about their unlawful
cunduct. They also never (hardly) hold accountable their subordinates,
unless it is so obviously apparent that if theydid nothing, they would
be exposed. This is such a case. Plaintiff seek relief! Also. plaintiff
incorperates the two grievances as part of this complaint. Respectfully.

4)   When ever plaintiff would come to the library for copies, Mr.
Bowlin would make extra copies of my documents and give a copy to
custody staff so that they would know plaintiff was filing greivances
and lawsuits against them. Also, this conduct lead to several writs
being denied due to the fact that plaintiff was unable to help an
otherwise person whom would have had adequate access to the courts.
Plaintiff was to file a Writ for Mr. Tommie Isle but the librarian
refused to let plaintiff in the library with Mr. Isle at the same time.
Again, when plaintiff tried to assist Mr. Washington with his law  suit,
Mr. Bowlin refused to allow plaintiff in the library at the same time
with these inmates. Plaintiff had been unable to research his own case
until he was ultimately transfered from Wasco to Corcoran State Prison.
Even though plaintiff had used his own law books, if it was up to the
librarian Mr. Bowlin, plaintiff would not have access to the courts
at all.

5)   In addition, When plaintiff tried tried to enter the library a
last time, he was automatically singled out by Mr. Bowlin and told
that he was not given a ducat (pass) for law library so that he couldnt
enter. At the same time, two inmates came to the library and asked
to check out some comic books, he let them come straight in! I asked
them did they recieve a ducat? They replied no. I tried to walk in with
them and Mr. Bowlin begain yelling for me to "get out, Im going to ban
you from here". Several days later, I recieved a CDCR RVR 115 that
was specifically as a means for retaliation. When this happened. I had
spoke with Mr. Justin Jackson #BK0201. He has already given a declarat-
ion regarding his interfering with helping others (re Mr. Bowlin), and
is willing to attest to this incidence too. Since my transfer to CSP/
Corcoran, I was finally able to file my writ petitions challenging my
conviction.                                  (16)

CLAIM FIVE: DELIBERATE INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS. DR. RIZK REFUSED TO CONDUCT HIS DUTIES REGARDING HOUSING ASSIGNMENTS, HE ACKNOWLEDGED THAT HE WAS AWARE THAT PLAINTIFF HAD A PENDING MEDICAL GRIEVANCE AND TWO ADA ACCOMODATION FORMS WHICH HE NEVER RESPONDED TO.

1)  Dr. Rizk is plaintiff's primary care provider. He is responsible for all medical decisions regarding my warefare and health. Whithout his examinations or orders, plaintiff does not recive treatment. As a result, plaintiff had brought to his attention the filing of the medical grievance seeking single cell status, as well as the two CDCR ADA 1824 forms (accomodation forms). He conceeded that he was aware of them, but he says to plaintiff that it takes time for an adequate response of these filings.

2)  It has recently became aware to plaintiff that, when a medical grievance is filed, it goes to the primary care provider for evaluation, as well as ADA 1824 forms. This is the ordinary "custom" and/or policy of this prison as well as others. This Doctor knew of the filings, and plaintiff had personally asked him to refer him to be placed on "single cell" status until the resolution of the Covid 19 epidemic is resolved. He says thats not in his field, only custody can do this. However, as plaintiff has demonstrated in his motion for temporary injunction relief, he could and should have requested the order. (see Title 15 CCR sec.3269(f)). This section specifically gives medical the authority to require single cell status. This Dr. is arbitrarily denying me the protection I would need to prevent the contraction and real possibility of death from this disease. Not withstang my requests for Covid 19 parole. Based upon the fact that plaintiff is elderly 60 (61 on 10/23/21), and has all the high risk qualifying medical conditions for the criteria, plaintiff is recieving intentional inadequate medical attention.

(17)

3)   Because housing assignment, .. for medical reasons are specifically
the duty of the medical staff, and because Dr. Rizk is plaintiff's
"primary care provider", he is responsible for the prevention of the
risk of Covid-19. If one of the main rules for prevention of Covid-19
is social distance (six feet apart) it is obvious that for a high
risk offender with athma, high blood pressure, and chronic kidney
disease (plaintiff also takes asperin regiments for his heart), that
if plaintiff inquired to Dr. Rizk about single cell status,..... and
was refused,(Notwithstanding that he lied about whether or not he
had discretion to do this),would be clearly "egregious conduct" which
creates a wanton disregard for plaintiff's health and safety.

4)   Notwithstanding the fact that Dr. Rizk acknowledged that he saw
both the inmate appeals 602 form, and the two ADA Accomodation forms.
plaintiff has already pointed out that housing is medical staffs
decision when it comes to medical issues. Plaintiff does not dispute
any openion of the Doctor, but that if the Doctor is misleading the
plaintiff of who to ask for single cell status when he knows that
under infectious deseases guidlines, he has a duty to make this rashio-
nal..... decision. Ultimately, plaintiff has contracted Covid-19.
Though not due to the refusal of single cell status. Plaintiff only
raises the issue that, there were no actual consideration on behalf
of Dr. Rizk, he simply lied and said its for custody to decide. This,
plaintiff knows as false. The first thing a Doctor does when an
inmate catches Covid-19 is to issue a quarantine, thereafter, plaint-
iff was sent to a single cell for two weeks. This shows that for the
reasons argued herein, plaintiff's cause of action against Dr. Rizk is
not simply a "difference of opinion", but that, Dr. Rizk is liable
for violating the ADA, as well as meeting the standards of deliberate
indifference.                    (18)

CLAIM_SIX:    AS A RESULT OF THESE CELL SEARCHES, PLAINTIFF WAS
              EXPOSED TO, AND CONTRACTED COVID-19. THE OFFICERS
              ALLEGED HEREIN KNEW OF THE RISK AND ACTED WITH DELIBERATE
              INDIFFERENCE TO PLAINTIFF'S HEALTH AND SAFETY. THIS
              WAS A CLEAR, & RECKLESS DISREGARD TO PLAINTIFF' HEALTH
              AND SAFETY. IN VIOLATION OF THE EIGHT AMENDMENT

1)   Here, plaintiff alleges that the defendants whom was repeated
cell searchers, were trained and recieved the protocol regarding the
standards for the prevention of the spread of the Covid-19 desease.
However due to the fact that plaintiff had filed a law suit against
these officers, against the on behalf of inmated Charles Clark, they
made clear that it was in retaliation for that, (see Attachment#1 at
6. re "Clark v. Gutierrez"). These officers were all placed on a
quarantine status during the period in which the cell searches was
conducted. They had the desease and avoided being detected by several
unlawful methods. (see Sacramental Bee report March 17, 2022. Cal-
OSHA report..."Evidence revealed prison employees were allowed to
circumvent Covid-19 screening stations, according to the Bee." Also,
"Infected workers who were expected to finish their shifts fueled the
virus spread." inter alia.). Also, retaliation was for all of plaintiff's
efforts to exercise his rights while in Wasco as well as SVSP!

2)   The last three searches of plaintiff's cell, was conducted by
c/o Espitia, Magdaleno, and Nitescu. Each of these officers tested
positive for covid-19 and throughout this period they hardly ever wore
their masks unless a superior officer was to enter the building. Non
of the preventative anti covid protocol was followed. These officers
are known for repetitious reinfections of the disease. As a result of
their conduct, plaintiff was exposed to, and contracted Covid-19.
Sometime between Nov.2021-Jan.2022, Espitia and an unknown officer,
during the time period while the first 8-9 inmates were on quarantine
status, plaintiff along with other witnesses, watched c/o Espitia

and his partner, search each quarantine cells. These particular cells
had a white sign on the door (per medical staff) which stated that they
were on "quarantine" status. These particular inmates had tested posit-
ive for Covid-19. The specific cells were 213, 210, 203, 112, and 149
of Bldg. A1. In addition, on or about 01/04/22, Espitia and Nitescu
searched 3 other cells that they knew were on quarantine. On 01/13/22
Espitia and Nistescu searched inmate Demitrius Smith's cell. C/o
Nitescu was sick for at least 12 days prior to this search. She was
coughing and sneezing. Officers would come into the building and knew
she was sick. Shortly after that search, plaintiff filed a greivance
on behalf of Demitrius Smith which ultimately lead to her being re-
tested and placed on quarantine for 2 weeks.

3)    On the day of plaintiff's last cell search, a medical team came
into the building and conducted Covid-19 testing for the entire building.
While the testing was taking place, Espitia (single handedly) searched
"every cell in the building"! Inmates were yelling that "we are on quara-
ntine." When I was being tested I asked them why dont they say something
to him? Nor was he wearing a mask. They said nothing. This was on or
about 02/22/22. On this date, plaintiff's test was positive for Covid-19.
(see attached test results) n1. As for officers Espitia, Magdelano,
Nitescu, and Aguilar, they all searched plaintiff's cell on several
different occasions. They all tested positive for Covid-19 during this
period, and, they all was clearly aware of the protocols established
by the "Public Health Dept," to avoid the spread of the disease. They
failed to follow the preventative protocols with a reckless disregard
for plaintiff's health and safety causing a direct and natural conseque
nce of  exposure to plaintiff. As a result of this exposure, plaintiff

(20)

has suffered serious injuries. Plaintiff is a "high risk" offender with numerous chronic health problems. He is classified by the CDCR system as a "high risk" offender. Plaintiff caught the disease and suffered injuries such as loss of weight, severe pain and discomfort, trouble breathing to where he was placed on an oxegen tank. The disease was exascerbated by plaintiff's asthma inter alia (see medical chart submitted as an exhibit) n2.

### CONCLUSION

As a result of defendants's conduct, plaintiff brings a cause of action to all the foregoing defendants. This is the epitome of retaliation. Plaintiff's cell was repeatedly searched, his property was confiscated, they never returned the property or allowed plaintiff to send his property home, they broke his typewriter and poured water inside of it. They exposed plaintiff to Covid-19 and plaintiff became seriously sick while all the time they knew he was a "high risk offender" for death of the disease, they intentionally gave plaintiff RVR 115's under false pretenses, plaintiff has evidence that for each item taken from his cell, he paid for. Not withstanding the fact that while at Wasco, they returned his package from Walkenhorst's, after he filed a greivance, Walkenhorst's in return charged plaintiff a $54.00 (or about) restocking fee). Plaintiff attempts to greivance here at Wasco, was futile. They are in direct violation of the 1st, 4th, 8th, and 14th Amendments of the U.S. Constitution.

DATE: 11-01-2022

(21)

RESPECTFULLY SUBMITTED,

/s/ LEON KEE MEYERS #AB7261

N1; N2; As for any exhibits or attachments, this court refuse to accept exhibits or attachments, therefore when this court request the documents and/or exhibits, they will be provided, respectfully.