1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON LEE MEYERS, | Case No. 1:22-cv-0539-SAB (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION |
| v. | |
| SCOTT KERNAN, et al., | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| Defendants. | |
| | (ECF No. 24) |

Leon Lee Meyers (Plaintiff), a state prisoner, is proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Plaintiff filed the instant complaint on November 12, 2021, in the United States District Court for the Northern District of California. (ECF No. 1.)

On May 2, 2022, the Northern District screened Plaintiff's complaint, dismissed the claims arising in its jurisdiction, and transferred the claims involving events that took place Wasco State Prison to this Court for review. (ECF No. 6.)

Currently before the Court is Plaintiff's third amended complaint, filed November 10, 2022. (ECF No. 24.)

///
///
///

1

# I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court  must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

# II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

As Plaintiff was previously advised, the Court does and cannot consider the claims arising from Salinas Valley State Prison as those claims were dismissed by the United States District Court for the Northern District of California prior to the action being transferred to this Court.[1]  (ECF No. 6.)  Accordingly, the Court summarizes only the claims relating to events that took place while he was housed at Wasco State Prison.

On April 22, 2021, Plaintiff was transferred from Salinas Valley State Prison (SVSP) to Wasco State Prison.  Officers at Wasco repeatedly retaliated against Plaintiff for filing lawsuits, writs, grievances, and complaining about the law librarian.

The retaliation started from the very first grievance Plaintiff filed in April 2023 regarding his property, placement on quarantine, and two Americans with Disabilities Accommodations forms.  Prison officials only responded to the property appeal.

On or about May 10, 2021, Plaintiff was housed in building 1, cell 124.  As Plaintiff was walking past the program office and was told by sergeant Thomas to not file grievances.  Officer Simpson also told Plaintiff not to file grievances.  As a result of Plaintiff exercising his rights, he began to experience a series of cell searches, especially after he complained to the program office staff about librarian Mr. Bowlin.  From the end of May to September 13, 2021, Plaintiff's cell was searched about 30 to 40 times by officers Espitia, Aguilar, Magdaleno, Denherder and Medina.  Most of the searches were conducted when Plaintiff was on the yard.  When he would return, they would tell Plaintiff the officers went in his cell.  Plaintiff's property and legal work would be disoriented.

On June 24, 2021 and July 6, 2021, the headquarters of public health branch handed out pamphlets regarding the new COVID-19 delta variant.  The repeated cell searches created a substantial risk to Plaintiff's health and safety which was exacerbated by the COVID-19 virus.

On July 15, 2021, Plaintiff's cell was searched and several personal items were taken by Espitia and Magdaleno because he assisted other inmates with legal work.

---

[1] In its May 2, 2022 order of dismissal in part and transfer, the Northern District of California specifically dismissed Plaintiff's Fourteenth Amendment, First Amendment, and Eighth Amendment claims against prison officials at Salinas Valley State Prison.  (ECF No. 6.)

1   On August 6, 2021, Plaintiff's cell was searched again and more property was taken.
2   Plaintiff requested a cell search slip and officer Aguilar signed his name.  Plaintiff was never
3   given the opportunity to send his property home and officer Simpson gave his property away.

4   The lead officer of the searches was officer Espitia as he would lead the mission to go
5   into Plaintiff's cell and take various items of his personal property.  One day, Plaintiff was giving
6   legal advice to another inmate and Espitia told the inmate to move away from Plaintiff's cell
7   door.  Approximately five minutes later, officers Espitia and Magdaleno went to Plaintiff's cell
8   and told him to step out, then ruffly searched Plaintiff for contraband.  The officers then
9   proceeded to search Plaintiff's cell.  As Plaintiff was looking inside his cell, officer Garza told
10  Plaintiff over the speaker to move away from his cell.  Plaintiff observed officer Magdaleno
11  sitting on his bunk reading documents from his legal work.  When Plaintiff returned to his cell,
12  the officers had taken "all kinds of" property and refused to allow Plaintiff to see what was all
13  taken.  After officers searched Plaintiff's cell they then proceeded to search inmate Clark's cell
14  to intimidate him for asking Plaintiff for legal assistance.

15  On or about August 12, 2021, inmate Davie went to Plaintiff's cell and was talking about
16  wanting to file a lawsuit against the librarian, Mr. Bowlin.  Plaintiff advised inmate Davie to
17  keep his voice down so officers would not hear him talking about filing a lawsuit.  The officers
18  subsequently searched inmate Davie's cell.  Then, on August 31, 2012, while Plaintiff and
19  inmate Davie were in the law library, officers had searched both of their cells.

20  On September 14, 2021, Plaintiff cell was searched by officers Denherder and Medina.
21  Water was spilled all over Plaintiff's legal property and his typewriter was broke.

22  The law library, Mr. Bowlin is working "in concert" with custody staff to hinder,
23  interfere, and thwart Plaintiff's attempts to access to the court, and assist others with filing
24  grievances and complaints.  Mr. Bowlin has refused to allow Plaintiff access to computers and
25  copies of court cases.

26  On one occasion, Plaintiff was attempting to assist an inmate with his writ and requested
27  a copy of a certain Senate Bill, but Mr. Bowlin refused to provide it when he saw that Plaintiff
28  was assisting another inmate.

1      On two separate occasions, before Plaintiff filed his grievance regarding Mr. Bowlin's

2  conduct, Plaintiff went directly to the "Program Office" and complained in person to lieutenant

3  Ledbetter, captain Carpenter, and sergeant Contreras, who all said they were aware of Mr.

4  Bowlin's conduct from other inmate complaints.  Plaintiff was directed to the principle, Mr.

5  Bowlin's supervisor.  Plaintiff filed a "Request for Interview" form with the principle, Mr. M.

6  Koop.

7      Whenever Plaintiff would go to the library for copies, Mr. Bowlin would make extra

8  copies of Plaintiff's documents and give a copy to custody staff so they would know Plaintiff

9  was filing grievances and lawsuits against them.  This conduct also lead to several writs being

10  denied due to the fact that Plaintiff was unable to help the other inmates.  Mr. Bowlin would not

11  let Plaintiff in the law library to assist other inmates.  Plaintiff was unable to research his own

12  cases until he was transferred from Wasco to Corcoran State Prison.

13      On the last occasion when Plaintiff tried to enter the library, he was automatically singled

14  out by Mr. Bowlin and told that he was not given a ducat (pass) for the law library so he could

15  not enter.  At the same time, two other inmates went in the library and asked to check out some

16  comic books, and Mr. Bowlin let them straight in.  Plaintiff tried to walk in the library, but Mr.

17  Bowlin yelled for him to "get out, I'm going to ban you from here."  Several days later, Plaintiff

18  received a Rules Violation Report as a means for retaliation.

19      Dr. Rizk is Plaintiff's primary care provider.  Plaintiff brought to Dr. Rizk's attention the

20  fling of a medical grievance seeking single cell status, as well as two CDCR ADA forms.  Dr.

21  Rizk conceded he was aware of them, but he told Plaintiff it takes time for an adequate response

22  to such filings.

23      Plaintiff has recently become aware that when a medical grievance and/or ADA form is

24  filed, it goes to the primary care provider for evaluation.  Dr. Rizk knew of Plaintiff's filings, and

25  Plaintiff personally asked him to be placed on "single cell" status until the COVID-19 pandemic

26  was resolved.  Dr. Rizk told Plaintiff that it was housing was up to custody.  Plaintiff claims Dr.

27  Rizk arbitrarily denied him protection to prevent contradiction and the possibility of death from

28  contracting COVID-19.    Housing is a medical decision when it comes to medical issues.

Plaintiff ultimately contracted COVID-19, but it was not due to the refusal of single cell status. Rather, Plaintiff raises the issue because there was no actual consideration by Dr. Rizk, he simply said its for custody to decide.

Plaintiff alleges that the Defendants who repeatedly searched his cell were trained and received the protocol regarding the standards for the prevention of the spread of the COVID-19 virus.  The officers were all placed on quarantine status during the period in which the cell searches were conducted.  The last three searches of Plaintiff's cell were conducted by officers Espitia, Magdaleno, and Nitescu.  Each of these officers tested positive for COVID-19 and throughout this period they hardly ever wore their masks.  These officers are known for repetitious reinfections of the disease.  As a result of their conduct, Plaintiff was exposed to, and contracted COVID-19.

## III.

## DISCUSSION

### A.    Retaliation

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983 even if the act, when taken for different reasons, would have been proper. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283–84 (1977).  Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. See Perry v. Sindermann, 408 U.S. 593, 597 (1972).

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (internal citation omitted).

///

///

1    Liberally construed, Plaintiff's allegations satisfy the pleading requirements for a First

2    Amendment retaliation claim against Defendants Thomas, Simpson, Aguilar, Espitia,

3    Magdaleno, Medina, Denherder, Garza, and Bowlin.

**B.    Confiscation/Destruction of Property**

5    Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d

6    728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under

7    the Due Process Clause; <u>see</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 532, n. 13 (1984) (citing <u>Logan v.</u>

8    <u>Zimmerman Brush Co.</u>, 455 U.S. 422, 435–36 (1982)); <u>Quick v. Jones</u>, 754 F.2d 1521, 1524 (9th

9    Cir. 1985), however, "an unauthorized intentional deprivation of property by a state employee

10   does not constitute a violation of the procedural requirements of the Due Process Clause of the

11   Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is

12   available," <u>Hudson</u>, 468 U.S. at 533.

13   Plaintiff complains that certain Defendants repeatedly searched his cell and confiscated

14   and/or destroyed some of his legal and personal property.   However, Plaintiff has no cognizable

15   due process claim with respect to Defendants' allegedly unauthorized deprivation of

16   his property, whether intentional or negligent, since a meaningful state post-

17   deprivation remedy for his loss is available to him. <u>See</u> <u>Hudson</u>, 468 U.S. at 533. California's tort

18   claim process provides that adequate post-deprivation remedy. <u>Barnett v. Centoni</u>, 31 F.3d at

19   813, 816-17 (9th Cir. 1994) ("[A] negligent or intentional deprivation of

20   a prisoner's property fails to state a claim under section 1983 if the state has an adequate post

21   deprivation remedy."); <u>see also</u> <u>Teahan v. Wilhelm</u>, 481 F. Supp. 2d 1115, 1120 (S.D. Cal.

22   2007); <u>Kemp v. Skolnik</u>, No. 2:09-CV-02002-PMP, 2012 WL 366946, at *6 (D. Nev. Feb. 3,

23   2012) (finding prisoner's alleged loss or destruction of newspaper, magazines, and books failed

24   to state a Fourteenth Amendment claim pursuant to <u>Hudson</u> and noting that "[i]f Plaintiff wishes

25   to recoup the value of the alleged lost materials, he will have to file a claim in small claims court

26   in state court.").

27   ///

28   ///

## C.   Access to the Courts

Plaintiff claims that he was denied access to the courts by librarian Bowlin with regard to several litigation efforts he attempted to pursue.  Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). The right of access to the courts is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354. To bring a claim, the plaintiff must have suffered an actual injury by being shut out of court. Christopher v. Harbury, 536 U.S. 403, 415 (2002); Lewis, 518 U.S. at 351; Phillips, 588 F.3d at 655.

Liberally construed, Plaintiff's allegations are sufficient to state a cognizable denial of access to the courts claim against Defendant librarian Bowlin.

## D.   Deliberate Indifference to Serious Medical Need

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (citation omitted).

"A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain."  Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (citation and internal quotation marks omitted).  "Indications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014).

1    Plaintiff claims that he suffers from asthma, high blood pressure, and chronic kidney

2 disease and Dr. Rizk refused to provide him single-cell status in order to avoid contracting the

3 COVID-19 virus.  As a general rule, all inmates are required to share a cell, and that "[i]nmates

4 are not entitled to single cell assignment, housing location of choice, or to a cellmate of their

5 choice." Cal. Code Regs. tit. 15, § 3269(a).  Single cell status may be appropriate for inmates

6 who demonstrate a history of in-cell abuse, significant in-cell violence towards a cell partner,

7 verification of predatory behavior towards a cell partner, or who have been victimized in-cell by

8 another inmate. Id. § 3269(e).

9    Plaintiff's claim that he is entitled to a single cell fails because there is nothing to suggest

10 that his condition automatically necessitates single cell status.  Further, Plaintiff acknowledges

11 that although he contracted COVID-19 it was not due to the lack of single cell status.  (Third

12 Am. Compl. at 23, ECF No. 24.)  Thus, Plaintiff cannot argue that he faced a substantial risk of

13 serious harm or that Dr. Rizk was deliberately indifferent by failing to grant him single cell

14 status.  Plaintiff's simple fear of not being single celled does not demonstrate deliberate

15 indifference.  Furthermore, the mere fact that Dr. Rizk may have violated a prison regulation

16 does not give rise to a constitutional violation.  See Sweaney v. Ada Cty., Idaho, 119 F.3d 1385,

17 1391 (9th Cir. 1997) ("To the extent that the violation of a state law amounts to the deprivation

18 of a state-created interest that reaches beyond that guaranteed by the federal Constitution,

19 [s]ection 1983 offers no redress." (quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370

20 (9th Cir. 1996); see also  Davis v. Kissinger, No. CIV S-04-0878-GEB-DAD-P, 2009 WL

21 256574, *12 n. 4 (E.D. Cal. Feb. 3, 2009).  In any event, the specific regulation states, "[i]n cases

22 where single-cell status is recommended by clinical staff due to mental health, developmental or

23 cognitive impairment, or medical concerns, a classification committee shall make the final

24 determination of an inmate's cell assignment." Cal. Code Regs. tit. 15, § 3269(g).  Accordingly,

25 Plaintiff fails to state a cognizable claim for relief.

26    **E.    Americans with Disabilities Act**

27    The Americans with Disabilities Act (ADA) provides, "no qualified individual with a

28 disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." Id. § 12131(2). The Supreme Court has held that "public entity" includes state prisons. United States v. Georgia, 546 U.S. 151, 154 (2006) (citation omitted).

Plaintiff does not state a viable claim under the ADA.   Although Plaintiff contends that Dr. Rizk denied him single cell status as an accommodation, he does not allege facts that show he was excluded from participation in, or denied the benefits of, any service or programs offered by the prison because of his disability, or that he was subjected to any type of discrimination by reason of his disability. Further, Plaintiff's allegations of inadequate medical care do not state a claim under the ADA. Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."); see also Simmons v. Navajo County, Ariz, 609 F.3d 1011, 1022 (9th Cir. 2010) (inadequate or negligent medical treatment alone does not constitute an unlawful failure to accommodate under the ADA or the Rehabilitation Act.).   In addition, to the extent Plaintiff sues Defendants in their individual capacities, he may not "bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA." Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002).

### F.      Exposure to COVID-19

Plaintiff   challenges the spread of COVID-19 due to the repeated searches of inmates' cells.

Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with

"food, clothing, shelter, sanitation, medical care, and personal safety." <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by <u>Sandin v. Connor</u>, 515 U.S. 472 (1995); <u>see also</u> <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000); <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1246 (9th Cir. 1982); <u>Wright v. Rushen</u>, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). "First, the deprivation must be, objectively, sufficiently serious." <u>Id.</u> (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." <u>Id.</u> (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. <u>Id.</u> at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. <u>Farmer,</u> 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. <u>Farmer</u>, 511 U.S. at 834; <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. <u>Johnson</u>, 217 F.3d at 731. Second, the prison official must "know[ ]of and disregard[ ] an excessive risk to inmate health or safety...." <u>Farmer</u>, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a

substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.

It is clear that COVID-19 poses a substantial risk of serious harm. See Plata v. Newsom, 445 F.Supp.3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.). However, in order to state a cognizable Eighth Amendment claim against the warden, and the other defendants named, Plaintiff must provide more than generalized allegations that the warden and other defendants have not done enough regarding overcrowding or prison movement or housing assignment to control the spread. See Booth v. Newsom, No. 2:20-cv-1562 AC P, 2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020); Blackwell v. Covello, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) (failure to state a claim against warden for failure to adequately control the spread of COVID-19 in the prison); Benitez v. Sierra Conservation Ctr., Warden, No. 1:21-CV-00370 BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021), report and recommendation adopted, 2021 WL 4593841 (E.D. Cal. Oct. 6, 2021) (Failed to state a claim on allegations that overcrowding/lack of distance between inmates has exacerbated the conditions leading to transmission of COVID. Plaintiff alleges that there is no way to socially distance, among other conditions.); Sanford v. Eaton, No. 1:20-CV-00792 BAM (PC), 2021 WL 3021447, at *7 (E.D. Cal. July 16, 2021), report and recommendation adopted in part, rejected in part, No. 1:20-CV-00792 NONE BAM(PC), 2022 WL 168530 (E.D. Cal. Jan. 19, 2022 (in order to state a cognizable Eighth Amendment claim against the warden, associate wardens and any other defendants named, Plaintiff must provide more than generalized allegations that the warden, associate wardens and other defendants have not done enough regarding overcrowding to control the spread.)

The transmissibility of the COVID-19 virus in conjunction with Plaintiff's living conditions, which he claims exposed him to COVID-19, are sufficient to satisfy the objective prong, i.e., that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm." The pertinent question in determining whether Plaintiff states a claim is whether

Defendants' actions demonstrated deliberate indifference to that risk of harm. The key inquiry is not whether Defendants perfectly responded, complied with every CDC guideline, or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they "responded reasonably to the risk." See Stevens v. Carr, No. 20-C-1735, 2021 WL 39542, at *4 (E.D. Wis. Jan. 5, 2021); accord Benitez v. Sierra Conservation Center, 1:21-CV-00370 BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) (same); Sanford v. Eaton, 2021 WL 3021447, at *8 (same).

Here, Plaintiff alleges that Defendants Espitia, Magdaleno, and Nitescu tested positive for COVID-19 and continued to search his cell which lead to him contracting the virus. Plaintiff's allegations are sufficient to give rise to a cognizable claim for unconstitutional conditions of confinement against Defendants Espitia, Magdaleno, and Nitescu.[2]

## G. Inmate Grievance Process

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). However, Plaintiff has no stand-alone due process rights related to the administrative grievance process. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (holding that there is no protected liberty interest to a grievance procedure). California's regulations grant prisoners a purely procedural right: the right to have a prison appeal. See Cal. Code Regs. tit. 15, §§ 3084-3084.9 (2014). In other words, prison officials are not required under federal law to process inmate grievances in a certain way. Thus, the denial, rejection, screening out of issues, review, or cancellation of a grievance does not constitute a due process violation. See, e.g., Evans v. Skolnik, 637 F. App'x 285, 288 (9th Cir. 2015) (a prison official's denial of a grievance does not itself violate the constitution); Wright v. Shannon, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his

---

[2] Although the Court is allowing this claim to proceed forward at the pleading stage based on Plaintiff's allegations that he contracted the disease because of Defendants' conduct and suffered adverse consequences thereafter. However, it is questionable as to the plausibility of how Plaintiff knew these officers actually had COVID-19 and such allegation will be subject to proof at the evidentiary stage of this case.

inmate appeals failed to state a cognizable claim under the First Amendment); Towner v. Knowles, No. CIV S-08-2823 LKK EFB P, 2009 WL 4281999 at *2 (E.D. Cal. Nov. 20, 2009) (allegations that prison officials screened out his inmate appeals without any basis failed to indicate a deprivation of federal rights); Williams v. Cate, 1:09-CV-00568-OWW-YNP PC, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims."). Similarly, Plaintiff may not impose liability on a defendant simply because he played a role in processing plaintiff's inmate appeals. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (because an administrative appeal process is only a procedural right, no substantive right is conferred, no due process protections arise, and the "failure to process any of Buckley's grievances, without more, is not actionable under section 1983.").

## IV.

## ORDER AND RECOMMENDATIONS

Based on the foregoing, the Court finds that Plaintiff has stated cognizable claim retaliation against Defendants Thomas, Simpson, Aguilar, Espitia, Magdaleno, Medina, Denherder, Garza, and Bowlin, a cognizable denial of access to the courts claim against Defendant Bowlin, and a cognizable claim for unconstitutional conditions of confinement based on exposure to COVID-19 against Defendants Espitia, Magdaleno, and Nitescu. However, Plaintiff has failed to state any other cognizable claims. In light of the fact that the Court previously notified Plaintiff of the deficiencies and granted leave to amend, further amendment is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-1449 (9th Cir. 1987).

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that:

1.  This action proceed on Plaintiff's retaliation claim against Defendants Thomas, Simpson, Aguilar, Espitia, Magdaleno, Medina, Denherder, Garza, and Bowlin, and Plaintiff's denial of access to the courts claim against Defendant Bowlin, and

cognizable conditions of confinement claim against Defendants Espitia, Magdaleno, and Nitescu for exposure to COVID-19; and

2. All other claims and Defendants be dismissed from the action for failure to state a cognizable claim for relief.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 26, 2023**

UNITED STATES MAGISTRATE JUDGE