1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT
9                      EASTERN DISTRICT OF CALIFORNIA
10

11   LEON LEE MEYERS,                      No.  1:22-cv-00539-KES-SAB (PC)

12              Plaintiff,                 FINDINGS AND RECOMMENDATIONS
                                           REGARDING DEFENDANTS' MOTION
13        v.                               FOR SUMMARY JUDGMENT FOR
                                           FAILURE TO EXHAUST THE
14   SCOTT KERNAN, et al.,,                ADMINISTRATIVE REMEDIES

15              Defendants.                (ECF No. 48)

16

17        Plaintiff is proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983.

18        Currently before the Court is Defendants' motion for summary judgment for Plaintiff's

19   failure to exhaust the administrative remedies, filed January 11, 2024.  (ECF No. 48.)

20                                         **I.**

21                              **PROCEDURAL HISTORY**

22        This action is proceeding on Plaintiff's retaliation claim against Defendants Thomas,

23   Simpson, Aguilar, Espitia, Magdaleno, Medina, Denherder, Garza, and Bowlin, denial of access

24   to the courts claim against Defendant Bowlin, and conditions of confinement claim against

25   Defendants Espitia, Magdaleno, Nitescu, Ledbetter, and Contreras for exposure to COVID-19.

26        Defendants filed an answer to the operative third amended complaint on September 11,

27   2023.  (ECF No. 40.)

28   ///

                                    1

On October 16, 2023, the Court issued the discovery and scheduling order.  (ECF No. 44.)

On January 11, 2024, Defendants filed the instant motion for summary judgment for failure to exhaust the administrative remedies.  (ECF No. 48.)  Plaintiff filed an opposition on March 1, 2024, and Defendants filed a reply on April 3, 2024.  (ECF Nos. 53, 57.)

**II.**

**LEGAL STANDARD**

A.    **Statutory Exhaustion Requirement**

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions."   42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.").  Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca,  747 F.3d 1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at 1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  Id.

2

1          **B.      Summary Judgment Standard**

2          Any party may move for summary judgment, and the Court shall grant summary judgment

3    if the movant shows that there is no genuine dispute as to any material fact and the movant is

4    entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino,

5    747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each

6    party's position, whether it be that a fact is disputed or undisputed, must be supported by (1)

7    citing to particular parts of materials in the record, including but not limited to depositions,

8    documents, declarations, or discovery; or (2) showing that the materials cited do not establish the

9    presence or absence of a genuine dispute or that the opposing party cannot produce admissible

10   evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may

11   consider other materials in the record not cited to by the parties, although it is not required to do

12   so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031

13   (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

14         The defendants bear the burden of proof in moving for summary judgment for failure to

15   exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available

16   administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.

17   If the defendants carry their burden, the burden of production shifts to the plaintiff "to come

18   forward with evidence showing that there is something in his particular case that made the

19   existing and generally available administrative remedies effectively unavailable to him."  Id.  "If

20   the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to

21   exhaust, a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However,

22   "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather

23   than a jury should determine the facts."  Id.

24         In arriving at this Findings and Recommendation, the Court carefully reviewed and

25   considered all arguments, points and authorities, declarations, exhibits, statements of undisputed

26   facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of

27   reference to an argument, document, paper, or objection is not to be construed to the effect that

28   this court did not consider the argument, document, paper, or objection. This Court thoroughly

reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.**

**DISCUSSION**

### A.    Allegations of Operative Complaint

Plaintiff was transferred from Salinas Valley State Prison to Wasco State Prison on or about April 22, 2021.  When Plaintiff arrived at Wasco State Prison he noticed that several of his property items were missing.  Plaintiff always had problems with staff in his attempts to help other inmates.  Plaintiff filed a grievance and two ADA accommodation forms due to his disabilities, but he never received a response to his requests.

On or about May 10, 2021, Plaintiff was advised by sergeant Thomas and property officer Simpson to not file grievances.  As a result of exercising his right to file grievances, Plaintiff began experiencing a series of cell searches.  Plaintiff also complained to the program office staff about librarian Bowlin's conduct.  On one occasion Plaintiff was attempting to assist an inmate with his writ and requested to get a copy of a certain Senate Bill.  When Mr. Bowlin saw that Plaintiff was helping another inmate, he refused to provide a copy of the Senate Bill and Plaintiff to leave the library.   Plaintiff was hindered from filing this complaint.  Plaintiff was also attempting to file a petition regarding his criminal conviction and a separate conditions of his confinement complaint.  Mr. Bowlin also prevented Plaintiff from assisting inmate Tommie Isle in filing a petition and assisting inmate Washington with filing an appeal.

From May to September 13, 2021, Plaintiff's cell was searched about 30 to 40 times by officers Espitia, Aguilar, Magdaleno, Denherder and Medina.  Most of the searches were conducted when Plaintiff was on the yard.  When Plaintiff would return from the yard, inmates would tell him that the officers went in his cell.  Simpson and Thompson returned a package to the vendor after Plaintiff filed a grievance.

On June 24, 2021 and July 6, 2021, the headquarters of public health branch handed out pamphlets regarding the new COVID-19 delta variant.  The repeated cell searches crated a substantial risk to Plaintiff's health and safety which was exacerbated by the COVID-19 virus.

///

4

On July 15, 2021, Plaintiff's cell was searched and several personal items were taken by Espitia and Magdaleno because he assisted other inmates with legal work.

On August 6, 2021, Plaintiff's cell was searched again and more property was taken. Plaintiff requested a cell search slip and officer Aguilar signed his name.  Plaintiff was never given the opportunity to send his property home and officer Simpson gave his property away.

Plaintiff is unaware of how much of his property has been taken from him.  Plaintiff began to ask for cell search slips but they would not provide them.  Whenever an inmate would go to Plaintiff's cell, officer Espitia would tell him to get away from Plaintiff's door.  The officers took "all kinds of property" and gave it away saying it was "hot trash" even though Plaintiff had receipts.  One day, Plaintiff was giving legal advice to inmate Clark and officer Espitia told Clark to get away from Plaintiff's cell door.  About five minutes later, officers Espitia and Magdaleno searched Plaintiff's cell.  Plaintiff observed officer Magdaleno reading documents from his legal work.  When Plaintiff returned to his cell, he discovered officers took some of his property.  Officers subsequently searched inmates Clark and Davie's cells to intimate him for asking Plaintiff for legal assistance.  However, Plaintiff proceeded to file a lawsuit on behalf of inmate Clark.

On or about August 12, 2021, inmate Davie was conversing with Plaintiff about wanting to file a lawsuit against librarian Bowlin.  Plaintiff advised inmate Davie to keep his voice down so officers would not hear him talking about filing a lawsuit.  On or about August 31, 2021, officers searched both Plaintiff's and inmate Davie's cells.

On September 14, 2021, Plaintiff cell was searched by officers Denherder and Medina. Water was spilled all over Plaintiff's legal property and his typewriter was broke.

**B.**     **Statement of Undisputed Facts[1]**

1.     On November 12, 2021, Plaintiff filed this 42 U.S.C. § 1983 action against 28 defendants in the United States District Court for the Northern District of California (Northern District Court).  (ECF No. 1.)

2.     The Complaint alleged various constitutional violations based on conduct at

---

[1] Hereinafter referred to as "UF".

Salinas Valley State Prison (Salinas Valley), located in the Northern District of California, and Wasco State Prison (Wasco), located in the Eastern District of California.  (ECF Nos. 1, 6 at 1-3.)

3.      The Northern District Court screened the complaint pursuant to 28 U.S.C. § 1915A, and dismissed with prejudice all claims premised on alleged events at Salinas Valley. The Northern District Court then transferred the balance of the action to this Court.  (ECF No. 6 at 4-12.)

4.      On September 29, 2023, the Northern District Court granted in part Plaintiff's motion to reopen the case for a single claim against two Salinas Valley officers, neither of whom are defendants in this action.  Meyers v. Kernan, Case No. 21-cv-8874-EMC, ECF No. 8 (N.D. Cal.).

5.      After three more screening orders, Plaintiff filed the operative third amended complaint (TAC) on November 10, 2022.  (ECF Nos. 11, 18, 22, 24).

6.      On January 26, 2023, Findings and Recommendations were issued which were later adopted by the Court, that limited the action to three cognizable claims based on events that occurred after Plaintiff's transfer to Wasco on April 22, 2021.  (ECF Nos. 30, 33-34.)

7.      The TAC alleges that between May 2021 and September 2021, defendants Espitia, Aguilar, Magdaleno, DenHerder, and Medina searched Plaintiff's cell 30-40 times.  (TAC at 13-14.)

8.      Plaintiff contends those searches were in retaliation for Plaintiff "helping people file suits, grievances and writs" and "to break [Plaintiff] from filing appeals and lawsuits for people."  (TAC at 14, 18.)

9.      Plaintiff alleges that Wasco's librarian, Defendant Bowlin, refused to let Plaintiff access the library computers, refused to provide copies of court cases, and refused to provide Plaintiff with a pass to enter the law library.  (TAC at 19-21.)

10.     Plaintiff further alleges that Bowlin's conduct lead to "several writs being denied" because "plaintiff was unable to help" other inmates with their lawsuits.  (TAC at 21.)

11.     The TAC alleges that between November 2021 and January 2022, Defendants Espitia, Magdaleno, Nitescu, and Aguilar searched Plaintiff's cell despite knowing that they had

1    tested positive for Covid-19.  (TAC 24-26.)

2         12.    As a result of those cell searches, Plaintiff allegedly contracted Covid-19 on

3    February 22, 2022.  (TAC at 25.)

4         13.    The California Department of Corrections and Rehabilitation (CDCR) operates a

5    statewide administrative grievance process for inmates, including those held at Wasco.

6    (Declaration of Howard E. Moseley (Moseley Decl.); ¶¶ 2-7; Declaration of F. Marquez

7    (Marquez Decl.) ¶¶ 2-3, 8-9.)

8         14.    Inmates are advised of their grievance and appeal rights in an orientation

9    handbook, in committee meetings, and during disciplinary hearings.  (Marquez Decl. ¶ 4.)

10        15.    Copies of Title 15, which sets forth an inmate's appeals rights, are available for

11   viewing in Wasco's law library.  (Marquez Decl. ¶ 4.)

12        16.    The statewide and Wasco grievance submission process ensures that grievances

13   are not lost or mishandled and are retrieved by only disinterested employees.  (Marquez Decl. ¶¶

14   5-6.)

15        17.    CDCR, including Wasco, maintains a comprehensive record of every grievance or

16   appeal submitted by an inmate.  (Marquez Decl. ¶ 8; Moseley Decl. ¶¶ 3-4, 7.)

17        18.    According to that record, Meyers has submitted seven grievances between January

18   1, 2020—two months before the Covid-19 pandemic began—and August 1, 2023.  (Moseley

19   Decl. ¶ 7-10, Exs. 1-2; Marquez Decl. ¶¶ 9-16, Ex. 1.)

20        19.    On or around July 10, 2020, while incarcerated at Salinas Valley, Plaintiff

21   submitted Grievance Log #14654, claiming he was entitled to early release because Covid-19

22   posed a high risk to him because of his medical conditions.  (Marquez Decl., Exs. 2 at 1, 3 at 2-4.)

23        20.    Plaintiff exhausted administrative remedies for that grievance.  (Marquez Decl. ¶

24   10.)

25        21.    Plaintiff submitted the other six grievances after arriving at Wasco on April 22,

26   2021. Three of them challenge rule violation reports Plaintiff received after officers found

27   "pruno" (Grievance Log #114741 & re-submitted as #115086) and fermenting fruit juice

28   (Grievance Log #142918) in his cell at Salinas Valley and Wasco, respectively.  (Marquez Decl.,

Exs. 2, 4 at 2-3 (Log #114741), 5 at 2-3 (log #115086), 9 at 2-4 (Log # 142918).)

22.     Plaintiff exhausted his administrative remedies for Grievance Log #142918, the challenge to the RVR he received at Wasco.  (Marquez Decl. ¶ 16; Moseley Decl. ¶ 10.)

23.     The other three grievances relate to complaints that Plaintiff did not receive his property in a timely fashion after transferring from Salinas Valley to Wasco.  (Marquez Decl., Exs. 6 (Log #116614), 7 (Log #12513), 8 (Log #124632).)

24.     In Grievance Log #116614, submitted on or around May 4, 2021, Plaintiff grieved about the purported four-week delay to receive his property, including legal documents, after transferring from Salinas Valley.  (Marquez Decl., Ex. 6 at 3.)

25.     The Office of Grievances approved the claim on May 23, 2021, noting that during the grievance interview Plaintiff stated, "I already received my property."  (Marquez Decl., Ex. 6 at 8-9.)

26.     Plaintiff did not appeal.  (Marquez Decl. ¶ 13.)

27.     On or around June 2, 2021, in Grievance Log #124632 (originally filed as Grievance Log #124513), Plaintiff grieved that he only received eight of ten boxes after transferring from Salinas Valley to Wasco, and that he did not receive his quarterly package. (Marquez Decl., Exs. 7 at 6, 8 at 2-3.)

28.     Plaintiff exhausted administrative remedies through both levels of review, when OOA denied Plaintiff's appeal because no property was unaccounted for.  (Marquez Decl. ¶¶ 14-15, Ex. 8 at 24-25; Moseley Decl. ¶ 9, Ex. 4 at 24-25.)

**C.     Description of CDCR's Administrative Remedy Process**

The California Department of Corrections and Rehabilitation (CDCR) operates a statewide administrative grievance process for inmates, including those held at Wasco. (UF 13.) Under Title 15 section 3481(a), an inmate may "submit a written grievance containing one or more claims . . . to dispute a policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare."[2] Inmates are advised of their grievance and appeal rights in an orientation handbook, in committee

---

[2] All citations to the Title of the California Code of Regulations are to the version in effect in 2021.

meetings, and during disciplinary hearings. (UF 14.) Copies of Title 15, which sets forth an inmate's appeals rights, are available for viewing in Wasco's law library. (UF 15.)

The administrative grievance process starts when an inmate properly submits a grievance. Section 3482, Preparation and Submittal of a Grievance, requires an inmate to submit a written grievance using CDCR form 602-1 to the Institutional Office of Grievances (OOG) by mailing it, submitting it through tablets or kiosks, or dropping it in a lock-box. Cal. Code Regs. tit. 15, § 3482(a), (c). Only specific departmental staff, and not staff regularly assigned to that housing unit, may retrieve grievances from the lock-boxes. Id. § 3482(a). This process ensures that grievances are not lost or mishandled and are retrieved by only disinterested employees. (UF 16.) The inmate must submit the grievance within 30 days of discovering the alleged harm. Cal. Code Regs. tit. 15, § 3482(b).

At Wasco State Prison, Operational Procedure WSP-207 implements Section 3482 to "ensure all grievances deposited into the individual lock-boxes are collected each day and . . . accessible only to the Office of Grievances staff." (Marquez Decl., Ex. 1 at 2.) Wasco has at least one lock box in all areas where inmates are housed, and only Wasco's "clerical staff" are authorized to collect and log grievances found therein. (Marquez Decl. ¶ 6, Ex. 1 at 3-4.) Operational Procedure WSP-207 specifically prohibits custody rank-and-file officers, like the Defendants here, from collecting grievance forms from the lock-boxes. (Marquez Decl. ¶¶ 6-7.) And while those staff may collect grievances directly from inmates, custody staff must provide the inmate with a "receipt, including a notation indicating the" grievance form "is being forwarded to the" OOG. (Marquez Decl., Ex. 1 at 4-5.) Those staff may not read or inspect the grievances, and must only deposit it at a secure collection site, i.e., a lock-box. (Id.)

Substantively, Section 3482 requires grievances to include all information necessary for the institution to evaluate the claim. Cal. Code Regs., tit. 15, § 3482(c). That includes a description of the event, key dates and times, and the names and titles of all witnesses and staff members allegedly involved. Cal. Code Regs., tit. 15, § 3482(c).

When OOG receives a grievance, even if untimely or improper for another reason, Section 3483(f) requires OOG to provide inmates with an "acknowledgement of receipt" within 14 days.

1    Again, Wasco's WSP-207 implements that section by requiring a "Receipt Acknowledgement"

2    when a grievance is accepted or, if the grievance is rejected, a printout detailing why the

3    grievance "was rejected and what action(s) need to be taken for it to be accepted." (Marquez

4    Decl., Ex. 1 at 5.)

5         Once an inmate properly submits a grievance and OOG accepts it, there are two levels of

6    review. Cal. Code Regs. tit. 15, §§ 3483, 3485. OOG must review and respond to the grievance

7    within 60 days. Cal. Code Regs. tit. 15, §§ 3483(g). An inmate unsatisfied with that decision

8    may appeal to the Office of Appeals (OOA) within 30 days. Cal. Code Regs. tit. 15, § 3485(b).

9    The OOA must then respond to the appeal within 60 days. Cal. Code Regs. tit. 15, § 3486(i).

10        **D.      Analysis of Defendants' Motion**

11        Defendants argue Plaintiff did not submit a grievance concerning the alleged retaliatory

12   cell searches, the alleged interference with Plaintiff's access to the courts, or the allegation that

13   certain Defendants caused Plaintiff's Covid-19 infection by searching his cell while they were

14   Covid-positive.  Rather, Plaintiff only grieved about lost property and rules violation reports

15   (RVR) for making "pruno" and fermented fruit juice.  In opposition, Plaintiff argues Defendants

16   threw away his relevant grievances and he feared retaliation if subsequent grievances were filed.

17   In response, Defendants argue Plaintiff's self-serving assertions that officers threw away his

18   grievances is unfounded and the fact that multiple grievances were filed concerning staff

19   misconduct belies his claim he was afraid to use the grievance system.

20        Here, Plaintiff's claims in this lawsuit relate to alleged conduct that took place between

21   April 22, 2021, when Plaintiff transferred to Wasco, and February 2022, when he allegedly

22   contracted Covid-19. (UF 6-12.)  As discussed, Plaintiff alleges that: (1) Defendants retaliated

23   against Plaintiff for submitting grievances and helping others with lawsuits by searching his cell

24   30 to 40 times (DUF 7-8); (2) Bowlin interfered with Plaintiff's right to access the courts by

25   preventing him from using library resources (DUF 9-10); and (3) Espitia, Magdaleno, Nitescu,

26   and Aguilar allegedly knew they had Covid-19 when they searched Plaintiff's cell between

27   November 2021 and January 2022 (UF 11-12.)

28   ///

It is undisputed that Meyers has submitted seven grievances between January 1, 2020 (two months before the Covid-19 pandemic began) through August 1, 2023.  (UF 23.)

Grievance log numbers 114741, 115086, and 142918, challenge rules violation reports Plaintiff received after officers found "pruno" (log #114741 & resubmitted as #115086) and fermenting fruit juice (log #142918) in his cell at Salinas Valley and Wasco, respectively.  (UF 21.)  Plaintiff exhausted his administrative remedies for log # 142918, the challenge to the RVR he received at Wasco.  (UF 22.)

The other three grievances relate to complaints that Plaintiff did not receive his property in a timely fashion after transferring from Salinas Valley to Wasco.   (UF 23.)  In grievance log #116614, submitted on or around May 4, 2021, Plaintiff grieved about the purposed four-week delay to receive his property, including legal documents, after transferring from Salinas Valley. (UF 24.)  The Office of Grievances approved the claim on May 23, 2021, noting that during the grievance interview, Plaintiff stated, "I already received my property."  (UF 25.)  Plaintiff did not thereafter appeal.  (UF 26.)  In grievance log #124632 (originally filed as grievance log #124513), submitted on or around June 2, 2021, Plaintiff grieved that he only received eight of ten boxes after transferring from Salinas Valley to Wasco, and that he did not receive his quarterly package. (UF 27.)  Plaintiff exhausted this appeal when the OOA denied the appeal because all his property was accounted for.  (UF 28.)

1.     Retaliation Claim

As previously stated, Plaintiff alleges Defendants retaliated against Plaintiff for submitting grievances and helping others with lawsuits by searching his cell 30 to 40 times.

While Plaintiff submitted grievance log numbers 114741 re-filed as 115086 and 142918, which related to RVRS involving cell searches-one cell search occurred when Plaintiff was still in Salinas Valley, and the other names an officer who it sued in this action.  (Marquez Decl., Exs. 4 at 2-3 (log #114741)5 at 2-4 (log #115086), 9 at 2-6 (log #142918).)  Nonetheless, these RVR-related grievances do not claim the searches were retaliatory.  (Marquez Decl., Exs. 4 at 2-3 (log #114741), 5 at 2-4 (log #115086), 9 at 2-4 (log #142918).)  The other three grievances-log #124632 (originally filed as log #124513) and log #116614, do not mention retaliatory cell

1    searches.  (Marquez Decl., Exs. 6 at 2-3 7 at 2-3, 6, 8 at 2-3.)

2         Plaintiff argues his reference to retaliation in his appeal of grievance log #124632 shows

3    he exhausted administrative remedies for his retaliatory cell-search claim. (ECF 53 at 4, 80.)  In

4    grievance log # 124632, Plaintiff grieved that he only received eight of his ten boxes after

5    transferring from Salinas Valley to Wasco, and that he did not receive his quarterly package sent

6    to Salinas Valley by third-party Walkenhorst. (UF 27; ECF 48-4 at 105, 112; Mot. at 5.) The

7    grievance office denied that grievance because records showed all ten boxes were transported to

8    Wasco and Plaintiff's quarterly package was returned to Walkenhorst. (ECF 48-4 at 106-07.) On

9    appeal, Plaintiff argued that either Salinas Valley or Wasco returned the quarterly package, so one

10   of them was responsible for the $43.61 return fee. (ECF 48-4 at 105.)  Buried within Plaintiff's

11   appeal, he asserted, "if the package was returned from Wasco, that means [officers] retaliated for

12   filing the [missing-property related] grievance." (Id.)

13        Contrary to Plaintiff's contention, this grievance does not serve to exhaust his retaliation

14   claim.  First, the substance of this grievance is factually distinguishable from the retaliation claim

15   proceeding in this action.  Here, Plaintiff alleges Defendants engage in retaliatory cell-searches,

16   whereas Plaintiff's appeal speculates Wasco employees retaliated by returning his quarterly

17   package to the sender, not a cell-search.  (UF 32.)  Furthermore, the applicable regulations

18   prohibit an inmate from adding new claims not presented in the original grievance.  Cal. Code

19   Regs. tit. 15, § 3484(d).  Adding an alleged retaliation claim against Wasco officials (albeit

20   substantively different than the retaliation claim herein) at the appeal level of review does not

21   serve to exhaust the administrative remedies as to the alleged new claim.  See, e.g., Brannon v.

22   Covarrubias, No. 22-16728, -- F. App'x --, 2024 WL 1253788, at *2 (9th Cir. Mar. 25, 2024)

23   ("Because prisoners cannot add new claims during the grievance process," plaintiff failed to

24   exhaust his claim raised for the first time on appeal); Harvey v. Schwarzenegger, No. C 07-1244

25   CRB (PR), 2009 WL 10680797, at *3 (N.D. Cal. Dec. 29, 2009), aff'd, 418 F. App'x 639 (9th

26   Cir. 2011) (inmates may not change issue on appeal); Dixon v. LaRosa, No. 2:10-cv-1441 GEB

27   KJN P, 2011 U.S. Dist. LEXIS 97655, at *18 (E.D. Cal. Aug. 30, 2011) ("[P]laintiff's efforts to

28   interject [new] claims at the second level of review . . . are unavailing."); Woodford v. Ngo, 548

U.S. 81, 90-91 (2006) (no exhaustion when a grievance is procedurally defective).  Moreover, this grievance did not alert the prison to alleged wrongdoing by Wasco officials because it named Walkenhorst or Salinas Valley.  Plaintiff cannot try to bootstrap unnamed Wasco officials on appeal.  See, e.g., Brown v. Gardner, No. 15-cv-1212-JAM-EFB P, 2017 WL 3394114, at *4 (E.D. Cal. Aug. 8, 2017) (no exhaustion where plaintiff did not identify the responsible parties).

Plaintiff further points to a CDCR form 22 (Request for Interview), dated September 14, 2021, directed to the Warden at Wasco and an undated form requesting to see a psychiatrist. (ECF No. 53 at 15-16.)  However, both of these are about a cell search, and do not mention retaliation.  Indeed, the September form 22 complains of an "institutional" search in Plaintiff's building, not a search directed in retaliation toward Plaintiff specifically.  (Id. at 15)  In addition, those forms do not satisfy the PLRA exhaustion requirement as Plaintiff is required to submit grievances on a form 602.  Cal. Code Regs. tit. 15, § 3482(a), (c); Ardds v. Martin, No. 22-cv-0133-TLN-KJN P, 2022 WL 1271490, at *16 (E.D. Cal. Apr. 28, 2022) (because regulations required use of form 602, "plaintiff's use of other methods to notify prison officials . . . did not exhaust administrative remedies.").

2.     Denial of Access to Courts Claim

Plaintiff further alleges that Defendant Bowlin interfered with Plaintiff's right to access the courts by preventing him from using library resources.

Grievance log numbers 14654, 114741 (re-filed as 115086), 142918, 124632 (originally filed as 124513), and 116614, do not mention that librarian Bowlin prevented him from using library resources thereby denying him access to the courts.  (UF 19-28.)

Plaintiff contends that he took steps to complaint about Bowlin's conduct; however, Plaintiff's complaints do not serve to exhaust the administrative remedies under the PLRA.  First, Plaintiff alleges he filed a CDCR form 22 "Request for Interview" with Bowlin's supervisor, Mr. Koop, who allegedly ignored that request.  (TAC at 20.)  Even assuming the truth of Plaintiff's assertion, it would not serve to exhaust the administrative remedies because proper exhaustion required Plaintiff to submit a CDCR form 601-1 grievance by mailing it to the OOG or dropping it in a lock-box.  (Cal. Code Regs. tit. 15, § 3482(a), (c); UF 17-18.)  Thus, Plaintiff's purported

submission of a "Request for Interview" form to Bowlin's supervisor does not satisfy the PLRA exhaustion requirement.  See, e.g., Mendoza v. Aguilar, No. 16-CV-05529 EDL (PR), 2018 WL 10424867, at *6 (N.D. Cal. Mar. 20, 2018) ("The law is clear that a CDCR Form 22 is not part of the exhaustion requirement.").

### 3.    Conditions of Confinement Claim

Lastly, Plaintiff alleges Espitia, Magdaleno, Nitescu, and Aguilar allegedly knew they had Covid-19 when they searched Plaintiff's cell between November 2021 and January 2022.

The only Covid-19 related grievance (log #14654) only seeks early release, and does not mention any Covid-positive officers conducting cell searches, or about Plaintiff contracting Covid-19.  (Marquez Decl., Ex. 3 at 2.)  Accordingly, this grievance did not serve to exhaust Plaintiff's condition of confinement claim against Defendants Espitia, Magdaleno, Nitescu, and Aguilar.

### 4.    Initial Burden of Proof by Defendants

Based on the preceding evidence, the Court finds that Defendants have met their initial burden of proof in demonstrating there is no genuine issue of material of fact because there exists an available administrative remedy and Plaintiff failed to exhaust his administrative remedies.  Albino, 747 F.3d at 1172.  The burden now shifts to Plaintiff to "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172.

In his opposition, Plaintiff contends that prison officials threw away grievances and threatened retaliation if he used the grievance system.  (ECF No. 53 at 2, 4, 6-7, 9-11.)

In response, Defendants argue Plaintiff's self-serving assertions are insufficient to defeat summary judgment and the fact that Plaintiff filed multiple grievances about staff conduct belie his assertion that he was too afraid of retaliation if he used the grievance system.  (ECF No. 57 at 3, 7-12.)

### 5.    Unavailability of Grievance Process

In his TAC, Plaintiff states "they simply threw away appeals on several occasions Plaintiff has attempted to file inmate appeals 602 forms, they were never documented with the exception

1  of one which were responded by Sgt. Thomas which told Plaintiff 'not to file grievances.'  As a

2  result, they had returned my package back to Walkenhorts's!  Even so, Plaintiff attempted to file

3  others but never got any response!"  (TAC at 2.)

4      Likewise, in his opposition, Plaintiff submits that he "did in fact file at least two

5  grievances raising the issues of 'retaliation.'"  (ECF No. 53 at 2.)  "They threw away plaintiff's

6  grievances complaining about staff for retaliation.  All others that did not have a major concern,

7  they processed."  (Id.)  "Also, while in Wasco, after the filing of the first two grievances, plaintiff

8  was warned not to file grievances by Sgt Thomas."  (Id.) (citation omitted.)  In addition, Plaintiff

9  contends that on the day his typewriter was broke, he filed a Form 22 to the warden.  (Id. at 4.)

10          a.      Thrown Away Grievances

11      With respect to Plaintiff's access to the courts claim, Plaintiff contends that he "filed his

12  grievance" about Bowlin, but some unidentified person "obviously threw it away."  (TAC at 20.)

13  In support of his contention, Plaintiff submitted the purported grievance, self-dated August 3,

14  2021, in which he complains that Defendant Bowlin denied him access to the courts.  (ECF No. 4

15  at 50-52.)  Plaintiff also contends that Wasco prison officials threw away two or three grievances

16  regarding his retaliation claim.[3]

17      Defendants submit that CDCR and Wasco have procedures that inmates must follow to

18  properly submit a grievance to ensure grievances are addressed and logged, and that only

19  disinterested persons have access.  (Marquez Decl. ¶¶ 6-7.)

20      Plaintiff's conclusory contention that "grievances" were thrown away is insufficient to

21  meet his burden of proof on summary judgment.  See, e.g., Ransom v. Lee, No. CV 14-

22  600-DSF (KK), 2019 WL 1495040, at *8 (C.D. Cal. Mar. 18, 2019)3 (allegation that defendant

23  "intercepted" or "destroyed" grievance "insufficient to create a genuine dispute regarding

24  exhaustion of administrative remedies;" collecting cases); Jackson v. Baca, No.

25  CV1210393JLSJEM, 2018 WL 1916307, at *6 (C.D. Cal. Feb. 13, 2018) ("Vague assertions that

26

27  [3] In this regard, Plaintiff makes inconsistent statements relating to the number of grievances he purportedly
    submitted.  (See ECF No. 53 at 2 ("at least two [retaliation] grievances"), 6 ("at least three grievances"), 78 (10 total
    grievances), 80 ("a grievance on Mr. Bowlin, and for retaliation").)

28

prison officials did not process an inmate's appeals, or stopped them from being processed, are insufficient to create a genuine factual dispute regarding the availability of a remedy." (cleaned up); collecting cases); McCoy v. Tate, No. 115CV01428MJSPC, 2017 WL 3453199, at *7 (E.D. Cal. Aug. 11, 2017) (similar); Belyew v. Honea, No. 217CV0508KJMACP, 2022 WL 4667230, at *9 (E.D. Cal. Sept. 30, 2022) (similar), rejected in part on other grounds 2023 WL 199424; Jeffries v. Fields, No. CV 12-1351 R (JC), 2014 WL 994908, at *18 (C.D. Cal. Mar. 10, 2014) (similar).  While detailed factual assertions may be sufficient to create a genuine issue of material fact, such is not the case here.  Plaintiff does not allege "when or to whom [the grievance] was submitted," or any other circumstances surrounding the submission of the purported grievance.[4] See Belyew v. Honea, 2022 WL 4667230, at *9 (conclusory allegation that grievance disappeared insufficient to survive summary judgment for failure to exhaust),; Snowden v. Sullivan, No. 1:20-cv-0415 JLT SAB PC, 2022 WL 1630989, at *1 (E.D. Cal. May 23, 2022) (Plaintiff did not carry burden of showing administrative remedies unavailable based on "generalized, conclusory statements" or claim that "he filed grievances, which were destroyed.").

In addition, although Plaintiff submits a copy of the purported grievance against Defendant Bowlin (ECF No. 4 at 50-52; ECF No. 53, Ex. C), there is no evidence to corroborate that this grievance or his retaliation-related grievances were actually submitted.[5]  In fact, the evidence before the Court supports the reasonable inference that he did not do so.  California Code of Regulations, title 15, section 3483 requires OOG to provide an "acknowledgment of receipt" within 14 days of receiving a grievance, and Wasco provided such for *all* of the other grievances it received from Plaintiff.  (Marquez Decl., Exs. 3 at 23, 4 at 6, 5 at 7, 6 at 6, 7 at 6, 8, at 6-7, 9 at 10.)

Further, despite his contention that he submitted grievances and did not receive an acknowledgment of receipt, Plaintiff took no further action to inquire into the status of the

---

[4] Despite initially suing 28 Defendants, Plaintiff does not allege who he believes purportedly threw away or disposed of his grievance.

[5] In contrast, Plaintiff also contends that Thomas "resolved plaintiff's grievance, but sergeant Contreras signed it. (ECF No. 53 at 5-6.)  Plaintiff's contention is puzzling given that he also claims that someone threw away his grievance prior to it being processed or resolved.

grievances.  Plaintiff never re-submitted the purported grievances or appealed the purported non-responses to the OOA.  Moreover, as demonstrated above, the evidence demonstrates that several grievances submitted by Plaintiff were amply recorded and responded to.  This case is distinguishable from Albino v. Baca.  There, the plaintiff demonstrated that, in addition to receiving no information about the grievance process, he never saw a complaint form and he repeatedly sought help with the grievance process from prison officers, who denied him assistance or information. Albino, 747 F.3d. at 1175-76.  Here, unlike in Albino, Plaintiff availed himself of Wasco's grievance and appeal process. Plaintiff submitted seven grievances from between January 1, 2020 (two months before the Covid-19 pandemic began) through August 1, 2023, which were recorded in the appeal system, processed, investigated, reviewed, and responded to by Wasco staff.  (UF 18-28.)  Thus, despite the unprocessed grievance form submitted by Plaintiff, a reasonable fact finder could only conclude that Plaintiff failed to exhaust his administrative remedies with respect to the unprocessed grievance form.  See, e.g., McCoy v. Tate, No. 1:15-cv-01428-MSJ PC, 2017 WL 3453199, at *4 (E.D. Cal. Aug. 11, 2017 (noting that Plaintiff could have filed a form 22 to inquire about the status of a grievance, but, without more, even that inquiry insufficient to show grievance existed); Penn v. Lucas, No. 1:18-cv-01482 AWI HBK PC, 2022 WL 17669951, at *6 (E.D. Cal. Dec. 14, 2022) (allegation that defendant lost grievance insufficient where plaintiff's grievance history suggested familiarity with grievance process and plaintiff did not inquire about status of unanswered grievance).

Also, in support of his contention, Plaintiff submits the declaration of Justin Jackson, who states, "I learned that [Plaintiff] is filing a lawsuit against Mr. Bowlin, and had already filed a grievance."  (ECF No. 53 at 26.)  However, Mr. Jackson's declaration provides no information about how he "learned" the information or any other facts supporting that he has personal knowledge of Plaintiff's purported grievance. Fed. R. Civ. P. 56 (declaration "must be made on personal knowledge").[6]

---

[6] Plaintiff also points to another inmate's lawsuit against Wasco officers. (ECF 53 at 10 (citing Plaintiff Ex. L).) But there, the Court rejected that inmate's claim that grievance coordinators intentionally interfered with his right to file grievances. (ECF 53 at 52, 59-60).) In any event, a "[p]laintiff cannot simply rely on another inmate's allegations to suggest remedies were unavailable to him." McLean v. Gutierrez, No. ED CV 15-275-RGK (SP), 2017 WL 6887309, at *8 (C.D. Cal. Sept. 28, 2017), report and recommendation adopted, 2018 WL 354604 (C.D. Cal. Jan. 10, 2018).

1   Based on the foregoing, Plaintiff has not shown the administrative remedies were

2   unavailable or excused.

3       b.      Threats of Retaliation

4   Plaintiff claims that he fear retaliation if he filed subsequent grievances.

5   "[A] prisoner is excused from the exhaustion requirement in circumstances where

6   administrative remedies are effectively unavailable, including circumstances in which a prisoner

7   has reason to fear retaliation for reporting an incident." Rodriguez v. Cty. of Los Angeles, 891

8   F.3d 776, 792 (9th Cir. 2018) (citing McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015) ). "In

9   order for a fear of retaliation to excuse the PLRA's exhaustion requirement, the prisoner must

10  show that (1) 'he actually believed prison officials would retaliate against him if he filed a

11  grievance'; and (2) 'a reasonable prisoner of ordinary firmness would have believed that the

12  prison official's action communicated a threat not to use the prison's grievance procedure and that

13  the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a

14  grievance.' " Id. (citing McBride, 807 F.3d at 987).

15  Plaintiff initially contends that his TAC alleges he "feared to file another grievance."

16  (ECF No 53 at 2, 11.)  However, the allegation in the TAC relates to circumstances at Salinas

17  Valley, not Wasco.  (ECF No. 24 at 9.)  Furthermore, Plaintiff admits he nonetheless filed a

18  grievance anyway.  (Id.)  Moreover, conclusory allegations are insufficient to defeat summary

19  judgment.  See Draper v. Rosario, 836 F.3d 1072, 1079-80 (9th Cir. 2016)

20  Second, Plaintiff argues the retaliation-related grievances officers purportedly threw away

21  demonstrate actual retaliation.  (ECF No. 53 at 11-12 (claiming he filed grievances about Bowlin,

22  officers breaking his typewriter, and officers returning his package to sender).  Plaintiff's

23  argument is difficult to comprehend as grievances about retaliatory conduct demonstrate that

24  Plaintiff did not "actually believe" officials would retaliate against him or that the threat of

25  retaliation was not of sufficient severity to deter him from actually filing a grievance.  Thus, the

26  claim that Plaintiff submitted retaliation-related grievances while at Wasco (in addition to the

27  other six grievances submitted at Wasco), weaken[] the objective basis for [Plaintiff's] contention

28  that he was deterred here from using the normal grievance process."  See Sealey v. Busichio, 696

18

F.App'x 779, 781 (9th Cir. 2017).  In sum, Plaintiff cannot both claim that he filed grievances that were thrown away and that he was too afraid to file the same grievances.  See, e.g., Polk v. Baron, -- F.App'x -- 2024 WL 1300004, at *2 (9th Cir. Mar. 27, 2024) (rejecting unavailability claim because plaintiff's assertion she complained about prison officials contradicted claim officer thwarted plaintiff from filing grievances).

Third, Plaintiff seeks to demonstrate retaliation based on alleged adverse actions unrelated to the grievance system, such as a form 22 request for interview with the warden and his psychiatrist request.  However, neither of these documents mention the grievance process or alleged retaliation; rather, they complain officers broke Plaintiff's typewriter during an "institutional cell search."  (ECF No. 53 at 12, 15-16.)  Plaintiff's reference to other cell searches and RVRs, likewise, do not mention the grievance process (id. at 7-8, 13.) and adverse events, alone, do not show an unavailable grievance system.  See McBride, 807 F.3d at 988 (noting that if adverse action, alone, was sufficient then "any hostile interaction between a prisoner and prison officials would render the prison's grievance system unavailable.  There is no reason to allow inmates to avoid filing requirements on the basis of hostile interactions with guards when the interaction has no apparent relation to the use of the grievance system.")

Fourth, Plaintiff claims that Thomas and Simpson retaliated by returning his quarterly package to Walkenhorst.  (ECF No. 53 at 12.)  However, other than his own assertion (of which he presents no personal knowledge to support), there is no evidence these officials were responsible for returning the package.  In fact, Plaintiff previously opined that someone from Wasco or Salinas Valley returned the package.  (ECF No. 48-4 at 104-05.)

Lastly, Plaintiff asserts that Thomas told him not to file grievances.[7]  When reviewing Plaintiff's grievance about his missing packages (log #124632), Thomas alleged said, "You shouldn't have filed a grievance[.]  You could've just came and talked to me."  (ECF No. 53 at 70 (appeal of log #124632).[8]  A few days later, Plaintiff received most of his missing property.

---

[7] Plaintiff's similar assertion about Simpson, raised in his opposition, lacks any factual details.  (ECF No. 53 at 12.)

[8] In the TAC, Plaintiff alleged Thomas told him "Don't file grievances."  (ECF No. 24 at 10.)  Irrespective of the statement considered the result is the same.

1   (ECF No. 24 at 10.)  Thomas's statement did not threaten harm and simply encouraged Plaintiff

2   to resolve his concerns informally.  See McBride, 807 F.3d at 988-89 (reasonable person of

3   ordinary firmness would have not believed Thomas's statement "communicated a threat [of

4   sufficient severity] not to use the prison's grievance procedure"); see also McLean v. Gutierrez,

5   2017 WL 6887309, at *8 (rejecting unavailability contention where officer allegedly threatened,

6   "I will get you for having my ass chewed out").  Further, there is no objective indication that a

7   reasonable prisoner would have understood Defendant Thomas's alleged statements to relate only

8   to a specific past grievance and not to future grievances.  See McBride, 807 F.3d at 987 (holding

9   that, to rely on a threat of retaliation to excuse exhaustion, the prisoner must "provide a basis for

10  the court to find that he actually believed prison officials would retaliate against him if he filed a

11  grievance" and that this "belief was objectively reasonable").

12                                          **IV.**

13                                **RECOMMENDATIONS**

14          Based on the foregoing, it is HEREBY RECOMMENDED that:

15      1.      Defendants' motion for summary judgment for failure to exhaust the

16              administrative remedies be granted; and

17      2.      The instant action be dismissed, without prejudice, for failure to exhaust the

18              administrative remedies.

19          These Findings and Recommendations will be submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-**

21  **one (21) days** after being served with these Findings and Recommendations, the parties may file

22  written objections with the Court.  The document should be captioned "Objections to Magistrate

23  Judge's Findings and Recommendations."  The parties are advised that failure to file objections

24  ///

25  ///

26  ///

27  ///

28  ///

within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 1, 2024**

_____
UNITED STATES MAGISTRATE JUDGE